OGDEN (HASELDEN v.). See Case No. 6,-190.

---

## Case No. 10,458.
### OGDEN et al. v. MAXWELL.
[3 Blatchf. 319.] [1]

Circuit Court, S. D. New York. Oct., 1855.

CUSTOMS DUTIES—CONSTRUCTIVE PERMITS TO LAND GOODS—FEES FOR SAME—PROTEST—USAGE—PERSONAL LIABILITY OF COLLECTOR FOR EXACTING ILLEGAL FEES.

1. Under the act of March 3, 1799, § 2 (1 Stat. 706), a collector has no right to charge fees for granting constructive permits to land goods, but only for such permits as he actually issues.

2. Where but one permit to land the baggage of all the passengers on one vessel was issued, and the collector exacted from the owner of the vessel fees for one permit for every five pas-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

sengers: *Held*, that the fees for more than the one permit were illegal, and could be recovered back, in an action by such owner against the collector.

[Cited in Hedden v. Iselin, 31 Fed. 269; Swift & Courtney & Beecher Co. v. U. S., 111 U. S. 29, 4 Sup. Ct. 247.]

3. No written protest against the exaction of such fees was necessary, as the act of February 26, 1845 (5 Stat. 727), requires such a protest only in regard to duties paid.

[Cited in Moke v. Barney, Case No. 9,698.]

4. No usage in regard to making such charges can legalize them.

[Cited in Swift & Courtney & Beecher Co. v. U. S., 111 U. S. 29, 4 Sup. Ct. 247.]

5. A collector is personally liable for the illegal acts of his deputy, in exacting fees not authorized by law.

[Cited in Cleveland, C., C. & I. R. Co. v. McClung, 119 U. S. 463, 7 Sup. Ct. 267.]

6. And he is so liable, although he believed the exaction to be legal, and although he has paid over the amount of it to the government.

This was an action against the defendant [Hugh Maxwell], as collector of the port of New York, to recover back money paid under the following circumstances: The plaintiffs [David Ogden and others] were owners of the ship Racer. She arrived at New York from Liverpool, in November, 1851, with 769 steerage passengers, and their wearing apparel and other personal baggage and tools of trade. The vessel was duly entered, and the wearing apparel, personal baggage and tools of trade were entered separately from the other goods brought by the vessel. Only one permit for the examination and landing of the baggage of all the passengers, was issued by the collector. But he demanded pay for 154 permits, being one permit for every five passengers, at the rate of twenty cents for each permit, being $30.80 in all. The plaintiffs paid this amount, in order to obtain the one permit. In March, 1852, the same vessel brought 764 passengers to New York from Liverpool, and, under like circumstances, and a like exaction by the collector, the plaintiffs paid $30.60 for 153 permits, although but one permit was issued. In each case, the money was paid without any written protest being made. It appeared, on the trial, that for more than ten years prior to November, 1851, it had been the uniform practice, at New York, for the collector to grant one permit for the baggage of all passengers arriving in any one vessel, and to charge therefor a fee of twenty cents for every five passengers mentioned in the entry, the permits being, in all cases, general, to examine the baggage of all the passengers, and, if nothing was found but personal baggage, to permit the same to be landed, without expressing the number of passengers, but applying to all on board. The jury found a verdict for the plaintiffs, for the amount claimed, with interest, subject to the opinion of the court on a case.

Francis B. Cutting, for plaintiffs.

Benjamin F. Dunning, for defendant.

BETTS, District Judge. An objection is raised by the defendant, preliminarily, to the action, or rather to his personal liability, on the ground that he acted, in the matter in question, as the agent of the government, and had paid into the treasury the moneys demanded, before suit was brought. This objection was not supported by any proof; and, although the court will judicially notice, that by the act of March 3, 1841 (5 Stat. 432, § 5), the defendant is entitled to retain, for his own compensation, from the fees and emoluments received in his office, no more than the sum of $6,000 per annum, and that all sums beyond that are to be accounted for and paid into the treasury, yet we cannot assume, without evidence, either that the total of his receipts from those sources exceeded that limitation in the year 1851 or the year 1852, or that the particular sums paid by the plaintiffs and sued for in this action, did not constitute a part of the emolument retained by the defendant for his individual use. We are, however, inclined to the opinion, for reasons hereafter to be stated, that if those suggestions had been established by the proofs, they would have furnished no adequate defence to the action.

The right of the collector to charge and collect the fees in question, is justified by the defence, both upon an implied authorization by the second section of the act of congress of March 3, 1799 (1 Stat. 706), and also under a long-continued usage and practice in the collector's office of this port, in executing that act in this particular. That section enacts that, "in lieu of the fees and emoluments heretofore established, there shall be allowed and paid for the use of the collectors, naval officers and surveyors appointed and to be appointed in pursuance of law, the fees following, that is to say: "to each collector, * * * for every permit to land goods, twenty cents." Section 46 of another act passed the same day (Id. 661, 662) appoints the manner in which the baggage and mechanical implements imported by passengers shall be entered, and directs that, on compliance with the conditions prescribed, "a permit shall and may be granted for landing the said articles."

The transactions at a collector's office, which are made subject to charges or fees, are enumerated in the statute, and the compensation to be collected for each act done by him is specifically stated. In the levy of these emoluments, he is governed by the limitations, no less than by the express directions of the statute. No equity or usage in respect to these rates of compensation can be appealed to, as a sanction for a departure from the terms of the act. It does not admit of question, that a charge of $61.40 would be illegal and extortionate, if no more than the personal baggage and implements of trade of two passengers were to be entered and landed as such, under two permits given by a collector, whatever might be the num-

ber or value of those articles. This would be so, because congress has required a definite service to be done by the collector, and has granted, for the performance of that service, a specific compensation. The statute gives no reward except for doing the individual act named; and no consideration of convenience to either or both of the parties, or saving of expense, by substituting another practice in place of that directed by law, will authorize a collector, colore officii, to charge and receive compensation for a service differing from that appointed by positive law.

Numerous adjudications in the courts of the United States in this district have declared that, when a rate of fees to an officer of court is established by statute for a particular service, it is illegal in the officer to charge or accept a greater fee for that service.

The rule is equally stringent in the state courts. An action of assumpsit will lie by the party making payment, against the officer, to recover back the overcharge. M'Intyre v. Trumbull, 7 Johns. 35. And, if the act be done corruptly, it is extortion, and subjects the officer to. indictment. People v. Whaley, 6 Cow. 661.

The custom or usage alleged to prevail at this port, to make constructive charges for granting permits, whatever may be its notoriety or continuance, is void, both because it contravenes the spirit of the statute, and also because there is no warrant of law, except under the statute, for imposing any charge or fee for that official act. The defendant would, without the aid of the statute, be guilty of extortion, in levying fees of any kind for his official services.

The high character of the collector takes away every color of suspicion that, in these cases, he was actuated by any wrongful motives. He administered the office as he found his predecessors had done, and most probably these special details of duty were performed by his assistants, and his assent thereto. if ever given, was merely formal. The principle, however, is not affected, if these presumptions are admitted as facts. The collector is personally liable for the illegal acts of his deputy, in exacting a compensation not authorized by law. M'Intyre v. Trumbull, 7 Johns. 35. And it is not necessary to the maintenance of a civil action for the recovery of money wrongfully collected, that any turpitude should be proved against the officer. The suit in no way rests on any illegal purpose of the defendant in exacting the payment. It is well sustained, if his official power was exercised in the collection, without warrant of law. Maxwell v. Griswold, 10 How. [51 U. S.] 242. The payment was compulsorily obtained from the plaintiffs in this instance, and they are entitled to charge the collector with the amount, notwithstanding he received it for and paid it to the government. Ripley v. Gelston, 9 Johns. 201. Any charges or costs illegally exacted by an officer colore officii, may be recovered back from him by the common law action of indebitatus assumpsit. Clinton v. Strong, 9 Johns. 370.

We do not consider the objection that the action should be in the names of the individual passengers, and not in that of the ship-owners, as sustainable. In the absence of proof upon this point, the implication would be, that the passage money was all that the ship-owners could claim from passengers for their transportation to and delivery at the port of discharge. This presumption is fortified by the fact, that the owners assumed the satisfaction of these demands, and also that the defendant exacted payment from them. The demands must, therefore, be regarded as charges which the owners were bound to satisfy, as a condition· to the unloading of the ship. If the demands were exacted illegally, the owners would have no remedy for them against the passengers, even if the passengers were bound to pay all proper port charges here.

We do not think that the act of February 26, 1845 (5 Stat. 727), applies to exactions of this character. The terms of that act, requiring notice in writing to be given to the collector of objections made to payments exacted by him, are expressly confined to duties paid. In all other respects, the parties stand upon their common law rights and liabilities; and, under those, the action in this case well lies, although the fees collected by the defendant were paid into the treasury before suit was brought. Ripley v. Gelston, ubi supra.

In our opinion, the collector has no authority to charge for any other permits than those actually issued, at twenty cents for each permit. In the present case, he has demanded and received payment for three hundred and seven permits, amounting to $61.40, when by law he was authorized to collect no more than forty cents, being twenty cents each for the two actually granted by him. Judgment must be entered for the plaintiffs, for the above excess, with interest.