## Case No. 12,719.

### SHAW v. GRINNELL.

[9 Blatchf. 471.] [1]

Circuit Court, S. D. New York. March 11, 1872.

CUSTOMS DUTIES—FEES TO COLLECTOR—APPEAL—ACTION TO RECOVER.

By the 15th section of the act of June 30, 1864 (13 Stat. 215), the decision of a collector of customs, as to fees, charges and exactions claimed by him in the performance of his official duty, is declared to be final and conclusive, unless an appeal is taken to the secretary of the treasury, and it is provided that no suit shall be maintained to recover any such fees, &c., alleged to have been erroneously or illegally exacted, until the decision on such appeal is had. A vessel from a foreign port, with dutiable goods on board, arrived at New York, and was there sold, under a decree on a libel in admiralty, to the plaintiff. The duties on the goods not being paid or secured, the inspectors in charge, under the order of the collector, took the goods to the public stores, according to the provisions of section 13 of the act of March 2, 1799 (1 Stat. 669), and of the act of March 2, 1861 (12 Stat. 209). The collector exacted from the plaintiff the fees, charges and expenses connected with the removal of the goods, as a condition of granting to him a clearance for the vessel for an outward voyage. The plaintiff paid the amount, under protest, but did not appeal to the secretary of the treasury, and then brought this suit to recover back the amount paid: *Held*, that, although the exaction was in fact, not warranted by law, the suit could not be maintained, because of the failure to appeal to the secretary of the treasury.

[Cited in Hedden v. Iselin, 31 Fed. 270.]

[This was an action by Mark Shaw against Moses H. Grinnell, collector of the port of New York, to recover duties exacted under protest.]

Robert D. Benedict, for plaintiff.

Noah Davis, Dist. Atty., for defendant.

WOODRUFF, Circuit Judge. I am not able to withdraw the claim of the plaintiff, in this case, from the operation of section 15 of the act of June 30, 1864 (13 Stat. 215). That section provides, that "the decision of the respective collectors of customs, as to all fees, charges and exactions of whatever character, other than those mentioned in the next preceding section, claimed by them, or by any of the officers under them, in the performance of their official duty, shall be final and conclusive against all persons interested in such fees, charges or exactions, unless * * * notice that an appeal will be taken * * * to the secretary of the treasury, shall be given within ten days, * * * and unless such appeal shall actually be taken within thirty days. * * * And no suit shall be maintained in any court, for the recovery of any such fees, costs and charges alleged to have been erroneously or illegally exacted, until the decision of the secretary of the treasury shall have been first had on such appeal."

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

About the 1st of April, 1869, the brig Julia Kelly, of Parrsborough, Nova Scotia, arrived at this port, with a cargo of goods, from the port of Hamburg. She was here proceeded against by libel, in admiralty, and, on or about the 12th of May, was sold by the marshal, under the decree of the court. The plaintiff became the purchaser, and received a bill of sale from the marshal, dated May 12th, 1869. Meantime, having dutiable goods on board, and the duties not being paid or secured, on the 5th of May, an order was issued, by the collector of the port, to the United States' inspectors in charge, to take the goods to the public stores, in accordance with § 56 of the act of March 2, 1799 (1 Stat. 669), and the act of March 2, 1861, amendatory thereof (12 Stat. 209). After the purchase above mentioned, the plaintiff applied to the defendant for a clearance of the brig for an outward voyage, and such clearance was refused, unless the fees of inspectors, charges of stevedores, and other expenses of removing the goods, were paid. The plaintiff, protesting against the exaction, paid the charges, amounting to $485.95 over and above the ordinary fees and charges for a clearance, and, without taking any appeal to the secretary of the treasury, brought this suit.

The form of the declaration herein is somewhat equivocal. The summons appears to be in assumpsit. The declaration, while it sounds in tort, for damages, gives a narrative of the exaction, and claims the money, alleged to have been illegally exacted, as damages, and there is no allegation, nor any proof, of any other damages.

I think it quite clear, that the exaction was not warranted by any law relating to the clearance of vessels. Certain papers are required to be produced, and fees for clearance paid, but no statute declares that costs or charges of unlading the vessel, under the order of the collector, shall be paid before the vessel shall be cleared; and, the statute under which such unlading is done, having made provision for those charges, there is no implication of intent to charge the vessel or its owners therewith. The statute directs, that, after the goods have remained in store for a period specified, they shall be sold, the duties, and all charges thereon, shall be deducted from the proceeds, and the surplus shall be transmitted to the treasury, for the use of the owner of the goods. And this should be so. The act was intended not only to secure to the government the duties on the goods, but was designed for the relief of the vessel and owners, not to burthen them. They, being carriers merely, had need of some provision of law whereby, when the owners of the goods, or the consignees, neglected to pay the duties or procure permits for the landing and delivery thereof, the ship might be discharged of her cargo, by delivery to the officers of the customs, and proceed on her future voyage.

The exaction was, therefore, unwarranted, and the plaintiff, if he had taken the requisite steps, would have been entitled to a return of the money which he was required to pay to obtain a clearance. But it is, I think, impossible to escape the provisions of the act of 1864, above cited. If that act related solely, as it does very largely, to duties on goods, it might be possible to construe the 15th section as limited to exactions already in that act mentioned. But the 14th section covers all such exactions. It includes all overcharges of duties on the goods, and also all tonnage duties on the vessel, and requires protest and appeal before suit; and then the 15th section, in the terms above cited, includes all fees, charges and exactions of whatever character, other than those mentioned in the 14th section, claimed by the collector in the performance of his official duty. It is a broad and general provision. It reaches all collectors and officers under them, and all requirements made by them in the performance of official duty.

It will not obviate this provision to say, that, because there is no law to warrant the exaction, therefore, this section does not apply. It is enacted for the express purpose of providing for exactions not warranted by law, and to regulate the manner in which re-imbursement may be had. Every excess of fees, every over-charge of duties, all charges of duty on goods that should be admitted free, are illegal charges. It makes no difference that some exactions are more plainly illegal than others. There was no occasion for a statute regulating a proceeding to recover back legal charges or exactions.

The enquiry is—Was it an exaction made by the collector in the performance of his official duty? Undoubtedly it was. It was his official duty to grant a clearance of the vessel on the production of proper papers and the payment of legal charges and fees. As collector, acting officially on the question whether the plaintiff was entitled to a clearance, he decided that the charges for the previous unlading must be first paid. The subject matter was within his jurisdiction. However great his mistake or error, it was his official act. Herein the case is distinguished from the illustrations suggested by the counsel for the plaintiff, where a collector is assumed to have casually obtained the manual possession of the property of another, and refuses to give up such possession without the payment of money, the collector not having possession or control of the property by virtue of his office, and having no official duty to perform in respect thereto.

In respect to the form of the action, several observations are pertinent: 1st. This is not an action on the case for fraud. There is no allegation of fraud or wilful misfeasance. There is no pretence that the collector acted otherwise in this matter than under a mistake in regard to the charges which could properly be required as a condition of grant-

ing the clearance. 2d. If this be not regarded as, in substance, an action to recover back the moneys illegally exacted, there is no evidence of any other damages. It does not appear that the plaintiff sustained any damage, except that he paid so much money, and there is no proof of any other. 3d. A plaintiff who has paid duties, charges or other exactions, cannot avoid the statute by claiming to recover back the money in an action sounding in tort. No suit can be sustained, in which the exaction shall be the ground, and the amount paid is made the measure of the recovery, without a compliance with the statute.

Although it is eminently just that these moneys should be refunded, I am not able to refuse to the defendant the benefit of the statute referred to. If the defendant paid over the money to the treasury of the United States, it is not only just, so far as it appears by any proofs before the court, that the money should be refunded by the government, but a failure to refund seems to me eminently unjust. Apparently, the government holds the goods themselves. It had full right and power to collect this money from the goods. It is not easy to see why that was not done; and, if the goods were sold and the proceeds are in the treasury, the government now holds the money as twice paid. How, in that state of things, can the plaintiff obtain re-imbursement of what it was wholly unnecessary for the protection of the government, and wholly unjust, to require him to pay? There is to this manifestly unjust result the dry legal answer—he should have appealed to the secretary of the treasury, and, failing to do so, he can maintain no suit. As I am constrained to say that this answer is sufficient in law, I must direct judgment for the defendant.