## HEDDEN v. ISELIN and others.

(*Circuit Court, S. D. New York.* June 28, 1887.)

1. **REVENUE LAWS—REAPPRAISEMENT—FEES—SECTION 2930, REV. ST.**
   Section 2930, Rev. St. U. S., provides that, where an importer is dissatisfied with an appraisement, he may forthwith give notice in writing to the collector, who, on receipt thereof, shall select one discreet and experienced merchant, familiar with the character and value of the goods in question, to be associated with one of the general appraisers, to examine and appraise them; the collector, in case they disagree, to decide between them, and that such appraisement shall be final. There is no statute declaring who shall pay the merchant appraiser, but article 472, Regulations Sect. Treas. 1883, directs collectors not to deliver merchandise thus reappraised without payment of the fees of the merchant appraiser by the importer, at the rate of five dollars *per diem*. *Held*, that such charge on the importer is an unlawful exaction, and that the expenses of reappraisement must be borne by the government. *Fielden* v. *Lawrence*, 3 Blatchf. 120, distinguished.

2. **SAME—ILLEGAL FEES—SECTION 2636, REV. ST.**
   Section 2636, Rev. St. U. S., provides that "every officer of the customs who demands or receives any other or greater fee, compensation, or reward than is allowed by law, for performing any duty or service required of him by law, shall be liable to a penalty of $200 for each offense recoverable to the use of the party aggrieved. *Held*, construing this section in connection with sections 1987, 2931, 2932, *in pari materia*, that it is intended to apply only to extortion, and does not contemplate mulcting a collector for exacting a deposit to cover the fees of a merchant appraiser, pursuant to the regulation of the secretary of the treasury.

*Alexander P. Ketchum*, for defendants in error.

*Henry C. Platt*, Asst. U. S. Atty., for plaintiff in error.

WALLACE, J. This action was brought in the district court to recover a penalty under the provisions of section 2636, Rev. St. U. S. See 28 Fed. Rep. 416. The statute is as follows:

"Every officer of the customs who demands or receives any other or greater fee, compensation, or reward than is allowed by law for performing any duty or service required from him by law, shall be liable to a penalty of $200 for each offense, recoverable to the use of the party aggrieved."

A verdict was rendered for the plaintiffs; and the defendant brings this writ of error to review the judgment entered upon the verdict. It appeared upon the trial that in July, 1885, the plaintiffs imported certain merchandise into the port of New York, of which port the defendant was collector, which was appraised for duty in advance of the invoice valuation. Being dissatisfied with the appraisement, the plaintiffs gave notice of such dissatisfaction to the collector, and at the same time deposited with a clerk in the cashier's office at the custom-house the sum of $10 wherewith to pay a fee of the merchant appraiser on the reappraisement. The collector was not present when the $10 was so deposited, but, by a regulation of the secretary of the treasury, (article 472, Regulations 1883,) collectors were directed not to permit a delivery to importers of merchandise reappraised without payment of compensation at the rate of five dollars *per diem* to the merchant appraiser; and, pursuant to this regulation, and in order to secure such payment, it

was the practice of the collector to require such a deposit to be made. Thereupon the collector selected a merchant appraiser; the reappraisement was made; the merchant appraiser was paid $2.50 for his compensation; and the balance of the deposit was refunded to the defendants in error. The exaction of this sum of $2.50 is the foundation of the present suit. It was not claimed upon the trial that an excessive compensation was exacted for the services of the merchant appraiser, but the theory of the action was that there was no statute authorizing the payment of any compensation to a merchant appraiser, and therefore that nothing should have been exacted of the plaintiff as compensation for his services.

At the close of the evidence the judge instructed the jury, in substance, that there was no statute which authorized the imposition of any charge upon the plaintiffs for the reappraisement of merchandise; that the reappraisement was a part of the system prescribed by law for ascertaining the value of importations; that it was a matter of right for the importer to have a reappraisement when dissatisfied with the appraiser's valuation; that it then became the collector's duty to appoint a merchant appraiser; and that any charge for the services of the merchant appraiser must be borne by the government. He submitted two questions of fact to the jury, instructing them that they were to determine,—*First*, whether the payment in question was a voluntary payment or not; and, *secondly*, whether the collector received the money through a subordinate as a condition of going on with the reappraisement. Among other instructions requested in behalf of the defendant, the judge was requested to direct the jury to find a verdict for the defendant upon the ground that the evidence was not sufficient to establish a cause of action. The exception to this instruction is sufficient, in the view taken of the meaning of the statute imposing the penalty, to present the material questions now brought up for consideration.

The plaintiff in error now insists that the ruling of the district judge that the charge made for the compensation of the merchant appraiser was unauthorized, is error. This objection goes to the foundation of the action. The services for which compensation was exacted are performed by virtue of section 2930, Rev. St. U. S., which provides that if the importer shall be dissatisfied with the appraisement he may forthwith give notice to the collector in writing, on the receipt of which the collector shall select one discreet and experienced merchant, to be associated with one of the general appraisers, familiar with the character and value of the goods in question, to examine and appraise the same; and if they disagree the collector shall decide between them, and the appraisement thus determined shall be final, and deemed to be the true value. There is no specific provision of law declaring how or by whom the merchant appraiser thus selected is to be paid, or what compensation is to be allowed him for his services. Prior to the act of August 30, 1842, the merchant appraisers called in upon a reappraisement were employed by the importer, and by the terms of the statute "at his own expense;" but that act vested the selection of the merchant appraiser in the collector,

and did not contain the provisions previously existing for their compensation. Consequently that act left the whole subject of their compensation, and, whether it is to be paid by the importer or by the government, to implication. As the discharge of the duties devolving upon merchant appraisers was not compulsory, congress must have contemplated that they would not serve without compensation, and that they were to be paid either by the importer, as formerly, or by the government.

Shortly after the enactment of the act of August 30, 1842, the question arose in this court whether the fees of merchant appraisers were to be paid by the importer, and it was decided that a reappraisement under that act was at the expense of the importer, and he was bound to offer the fees of the appraiser in order to put the collector in the wrong for not ordering the reappraisement. *Fielden* v. *Lawrence*, 3 Blatchf. 120. This question was, however, only incidentally under consideration in that case, and does not appear to have been discussed by counsel; and, as the ruling upon the other points involved were decisive, its determination was not necessary to the decision of the case, and ought not to be controlling now. If there were any reason to suppose that the changes introduced by the act of 1842 had been brought to the attention of the court, what was said, although *obiter*, would be entitled to the highest respect, as indicating the opinion of judges of great learning and great familiarity with all questions respecting the interpretation and construction of the revenue laws.

The plaintiff in error relies upon the construction of the law adopted by the treasury department, and, as is claimed, consistently adhered to by that department ever since the act of August 30, 1842, went into effect. The only evidence in the record of this construction is found in the regulation of 1883, although there is no reason to doubt the statement in the brief of the attorney of the United States that this regulation embodies the practice of the treasury department ever since the act of 1842 was passed; and this statement is not controverted by the counsel for the defendants in error. The concession does not materially assist the plaintiffs in error. Although in the construction of a doubtful and ambiguous law the contemporaneous and continuous construction of those who are called upon to act under the law, and are appointed to carry its provisions into effect, is entitled to great respect, (*Edwards* v. *Darby*, 12 Wheat. 206; *U. S.* v. *Moore*, 95 U. S. 760; *U. S.* v. *Hill*, 120 U. S. 169, 7 Sup. Ct. Rep. 510,) their interpretation is only controlling where the language of the law is ambiguous. The court must look to the laws themselves, and not to the construction placed upon them by the heads of departments, although these are entitled to great respect, and will always be weighed by the court in cases of doubt or ambiguity. There is no ambiguity, and no room for difference of opinion, as to the meaning of the language of section 2930, nor has there been since the act of 1842. Congress omitted to make any provision subjecting the importer to the expense of a reappraisement, or for the compensation of merchant appraisers, in the act of 1842, and has never made any since that act. This may have been an oversight, but it is not the province

of the court to correct it. Equally well it may have been the deliberate purpose of congress not to subject the importer to the expense of a reappraisement when he was no longer permitted to select the merchant appraisers. No principle is better settled than that a tax, or charge in the nature of a tax, upon the citizen, can only be created by plain and explicit language. *Adams* v. *Bancroft*, 3 Sum. 387. Here it was sought to be raised by silence. It must be held that there was no legal authority for the exaction.

Although the fee charged for the services of the merchant appraiser was an unlawful exaction, the plaintiffs were not entitled to recover the penalty prescribed by section 2636. The section is obviously intended to impose a penalty as a punishment for extortion by officers of the customs, and the mere statement of the proposition that such a statute contemplates the mulcting of a collector for an act done in the honest discharge of his duty, and in obedience to the regulation of the secretary of the treasury, suggests a doubt whether this statute is fairly capable of such an interpretation. Unless the language, read in connection with other statutes *in pari materia*, requires such a meaning, it is not to be supposed that congress intended to visit an act performed from motives which the law recognizes as upright and commendable with a severe penalty. It has always been held that extortion proceeds only from a corrupt mind. *People* v. *Whaley*, 6 Cow. 661; *Com.* v. *Shed*, 1 Mass. 227; *Jacobs* v. *Com.*, 2 Leigh. 709; *State* v. *Stotts*, 5 Blackf. 460; *Cutter* v. *State*, 36 N. J. Law, 125.

The section is a re-enactment of section 73 of the act of March 2, 1799. The original provision has never been expressly repealed, but, since it first found a place among the statutes, the revenue laws have been so completely remodeled in reference to the liability of the customs officers for duties, charges, or fees unlawfully exacted, and as respects the remedies of importers and others interested in contesting such exactions, that the provision in question has long been practically obsolete. No decision is found in the reports in which this statute has ever been resorted to as the foundation of an action; but suits to recover fees illegally exacted by customs officers have been brought in the form of the ordinary action of *assumpsit*. *Ogden* v. *Maxwell*, 3 Blatchf. 319; *Barber* v. *Schell*, 107 U. S. 617, 2 Sup. Ct. Rep. 301.

By the act of March 3, 1863, § 12, (12 St. 741,) now section 987 of the Revised Statutes, congress enacted that when, in any suit or proceeding against a collector or other officer of the revenue for any act done by him in the performance of his official duty, the court certifies that there was probable cause for the act done, or that he acted under the direction of the secretary of the treasury or other proper officer of the government, no execution shall issue against such collector or other officer, but the amount recovered shall, upon final judgment, be paid out of the proper appropriation from the treasury. The effect of this statute is, when a certificate is given, to practically convert the suit against the officer into a claim against the United States. *U. S.* v. *Sherman*, 98 U. S. 565, 567. However it may have been before, since the enactment of this

provision it is plain that the laws of congress do not contemplate the punishment of an officer of the revenue, by penalty or otherwise, for any act done in the honest discharge of his duty, or in obedience to the direction of the head of the department.

What was left of the statute of 1799, after the act of 1863, was still further curtailed and emasculated by the act of June 30, 1864, now found in sections 2931, 2932, Rev. St. U. S. By that act (sections 14, 15) the decision of the collectors of customs, "as to all fees, charges, and exactions of whatever character" claimed by them, or any officers under them, in the performance of their official duty, was made "final and conclusive against all persons interested in such fees, charges, or exactions," unless a protest was served and an appeal taken from the decision to the secretary of the treasury. The act further provided that no suit should be maintained in any court for the recovery of any such fees or charges until the decision of the secretary on such appeal, or unless his decision should be delayed more than 90 days. The effect of this act, in a suit brought against a collector of customs to recover fees illegally exacted by him, was considered in this court in *Shaw* v. *Grinnell*, 9 Blatchf. 471; and it was held that the fees having been exacted by the collector in the performance of his official duty, and the plaintiff not having taken an appeal to the secretary of the treasury, the action could not be maintained, although the exaction was illegal.

Thus it appears that at the time of the revision of the statutes in 1873 the decision of the collector was final as to the legality of the fee exacted of an importer, unless an appeal were taken to the secretary of the treasury; and whenever an officer of the customs, or any other officer of the revenue, was sued for exacting a fee, or doing any other act pursuant to the direction of the head of his department, he was entitled to a certificate which in legal effect absolved him from personal liability, and transmuted the cause of action into a demand against the government. To this extent the provisions of the law of 1799 were superseded, and, if they had not been reproduced in the Revision, it would seem doubtful whether they were still in force. As, however, the law was retained in the Revision of the statutes, some effect and meaning must be given to it. But it is to be read in connection with the provisions of the acts of 1863 and 1864, referred to, which are also retained in the Revision. Reading the three sections together (2636, 1987, and 2932) as *in pari materia*, and without reference to other provisions of the Revised Statutes which may still more restrict the meaning of section 2636, the only effect that can be given to that section is to construe it as authorizing an action against an officer for a penalty when he has exacted fees under circumstances which do not entitle him to a certificate pursuant to section 1987, and after the person aggrieved has taken an appeal to the secretary of the treasury pursuant to section 2932. If, upon an appeal to the secretary of the treasury, that officer adopts and sanctions the act of the collector or other officer of customs charged with exacting an illegal fee, it may well be assumed that the exaction was of a character which entitles the officer to a certificate of probable cause.

The evidence upon the trial of this action did not tend to make a case falling within the section as thus construed. On the contrary, it showed that the defendant exacted the fee charged for the services of the merchant appraiser in pursuance of the regulations of the secretary of the treasury. The defendant was therefore entitled to the instruction that the evidence was not sufficient to establish a cause of action.

The judgment is accordingly reversed.