AGNEW, Collector of Internal Revenue, et al. v. HAYMES.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

No. 576.

1. INTERNAL REVENUE—LIABILITY OF OFFICER FOR WRONGFUL SEIZURE.

Rev. St. § 970 [U. S. Comp. St. 1901, p. 702], provides that where, in any prosecution on account of the seizure of any vessel or goods by any collector or other officer of the government, judgment is rendered for the claimant, but it appears to the court that there was reasonable cause for the seizure, it shall so certify, and in such case the claimant shall not recover costs, nor shall the person who made the seizure be liable to suit on account of it, provided that the vessel, goods, wares, or merchandise be, after judgment, forthwith returned to such claimant. Section 989 [U. S. Comp. St. 1901, p. 708] provides that "when recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him * * * in the performance of his official duty, and the court certifies that there was probable cause for the act, * * * or that he acted under the directions of the * * * proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall * * * be paid. * * * from the treasury." Held, that such two sections are not inconsistent, nor does section 989 authorize a recovery against a revenue officer for a wrongful seizure, when made upon probable cause, and when the goods are returned intact; but their effect, when construed together, is to limit the claimant in such case to an action for loss or damage to his property while in the custody of the officer, and to convert the judgment recovered therefor into a claim against the government, where the court certifies that the officer acted either upon probable cause or under the directions of a superior officer.

2. SAME—ACTION FOR WRONGFUL SEIZURE—DEFENSE OF PROBABLE CAUSE.

In an action against an internal revenue officer for a wrongful seizure of property which has been returned to the claimant intact, proof of prob-

able cause for such seizure is a complete defense, and may be made, although the court, in rendering judgment for the claimant in a proceeding for the forfeiture of the property, failed to make the certificate of probable cause provided for by Rev. St. § 970 [U. S. Comp. St. 1901, p. 702]; and where the proof shows that defendant made the seizure by direction of the Commissioner of Internal Revenue, based upon information received from his special agents which justified a suspicion that the plaintiff was violating the law, the court is warranted in charging the jury as matter of law that there was probable cause.

In Error to the Circuit Court of the United States for the Western District of Virginia, at Danville.

For opinion below, see 132 Fed. 525.

In the year 1901 T. J. Haymes, the plaintiff below, was operating a registered grain distillery at Elba, in the county of Pittsylvania, Sixth collection district, Va. The distillery had a surveyed capacity for the consumption of three bushels of material a day, and a required yield of 3½ gallons of distilled spirits per bushel. In the month of June, 1901, the distillery was examined by Rives and Shelly, officers of the internal revenue, and also by Revenue Agent C. H. Ingram, who, on the 19th of that month, made his report in writing to the Commissioner of Internal Revenue, advising the latter of various conditions and circumstances in and about the distillery which indicated that the same was being operated with intent to defraud the United States of the tax upon spirits distilled there, and of nonpayment of the taxes on spirits already produced and removed from the distillery. Acting upon the information derived from this report, and also from reports of Rives and Shelly, on the 28th of June, 1901, the Commissioner of Internal Revenue, by letter, advised Park Agnew, the collector of the Sixth Virginia district, that, in the opinion of his office, the circumstantial evidence was sufficient to warrant the seizure of Haymes' distillery, and directed the collector to take such action. In obedience to this instruction, the collector, on the 9th of July, 1901, through his deputy, John R. Brown, made a seizure of the distillery and fixtures, together with the spirits on hand, as forfeited to the United States for violations of the internal revenue laws. After the seizure, the case was transmitted to the United States attorney for the Western District of Virginia, for proceedings in rem against the property, under the statute, and thereupon, on the 26th of October, 1901, an information was duly filed, in the District Court of the United States for the Western District of Virginia, against the said property, alleging its forfeiture to the United States under the provisions of section 3257 of the Revised Statutes [U. S. Comp. St. 1901, p. 2198]. Haymes filed his bond, as required by statute, in the sum of $250.00, for costs, and was allowed to intervene as claimant of the property. We assume, also, that he, by some form of pleading, denied the cause of forfeiture alleged in the information, although this does not appear in the record. The case was continued until the 15th of April, 1902, when, at the regular term of the United States District Court, at Danville, Va., without a trial of the issue or hearing upon the merits, this order was entered:

"United States, Plaintiff, v. 1 Still, etc., claimed by T. J. Haymes, Defendant. In Rem.

"This day came the United States attorney, and came also the said claimant, defendant in this case. Whereupon, on motion of said United States attorney, for good cause shown, it is ordered that this case be dismissed, and stricken from the docket of this court."

No certificate of reasonable cause of seizure was entered by the court. The record does not show that the property was restored to Haymes, but it is evident from what took place afterwards that it was, or at least so much of it as was still in the custody of the officers at the time the proceeding in rem was dismissed. It appears from the record that soon after the seizure and the transmission of the case to the United States attorney, the property under seizure went into the custody of the United States Marshal for the Western

District of Virginia. On the 20th of August, 1902, Haymes brought the present suit in the circuit court of Pittsylvania county, Va., against Park Agnew, collector of internal revenue, and John R. Brown, his deputy who made the seizure, for the recovery of damages alleged to have resulted from the seizure of the property. Upon petition of defendants, the case was removed for trial to the Circuit Court of the United States for the Western District of Virginia. Haymes filed his declaration in his suit against the defendants, in which he alleged, in substance, as his grounds for damages, that they had, on the 9th of July, 1901, unlawfully, wrongfully, and without any reasonable or probable cause, and against his will and protest, seized and taken possession of his distillery, distillery premises, distillery apparatus, tools and fixtures, together with 295½ gallons of distilled spirits, and had unlawfully held and detained the same for one year from the date of the seizure. That whilst the said property was so unlawfully and wrongfully in the possession and control of the said defendants, they negligently, carelessly and wrongfully broke, damaged, injured, and destroyed the same, so that 110 gallons of the distilled spirits were entirely wasted, and the machinery and tools rendered unfit for use. There is a further allegation that, by reason of the seizure and detention of the property, etc., the plaintiff was greatly injured in his credit and reputation, and brought into public scandal, disgrace, and infamy among his neighbors and business men, and that for this cause, he has not been able to secure the credit necessary for the conduct of his business; and, as an additional ground for damages, that he had been obliged to lay out and expend the sum of one hundred dollars, in order to secure the release of his property. And for these causes he demanded damages in the sum of nineteen hundred ($1,900) dollars. In connection with this declaration, the plaintiff filed an amended bill of particulars, as follows:

"T. J. Haymes v. Park Agnew, Collector. Amended Bill of Particulars.

"To damages sustained by plaintiff by closing up his business from
   July 9, 1901, to April 1, 1902...............................$ 950 00
"To damage to credit and reputation of plaintiff................... 900 00
"To amount paid out in having property released from seizure.... 50 00

"Making a total damage claimed of.......................$1,900 00"

A demurrer filed by defendants for misjoinder of causes of action was overruled by the court, to which the defendants excepted. The defendants then entered a plea alleging that plaintiff had recovered damages against S. Brown Allen and the Fidelity & Deposit Company, in a suit originally brought by the plaintiff in the circuit court of Pittsylvania county, Virginia, and afterwards removed for trial to the Circuit Court of the United States for the Western District of Virginia, upon the same cause of action as in the present case, which recovery had been settled and satisfied, and was a bar to recovery in this action. It does not appear of record that this plea was relied on or that any consideration was given it by the court. Thereupon the defendants entered their plea of general issue, and the case was brought to trial before a jury.

At the close of the testimony the defendants requested the court, among others, to give the following instructions to the jury: "The court further instructs the jury that, if they believe that the reports and facts laid before the Commissioner of Internal Revenue by the visiting officers, Rives and Shelly, and by the revenue agent, C. H. Ingram, were such as to lead a reasonable and cautious man to honestly entertain the belief that the law was being violated by T. J. Haymes, the plaintiff, in the operation of his distillery, and that, in consequence of such facts and circumstances being made to appear to the commissioner, he, in good faith in the discharge of his official duty, directed the seizure of the plaintiff's property, then the plaintiff cannot recover any damage in this case on account of such seizure. The court further instructs the jury that if they believe from the evidence in this case that there were such circumstances as would indicate the law was being violated, and, in consequence of such circumstances, the distillery was seized, then the plaintiff can-

not recover." Both of these instructions were refused by the court, and the defendants duly excepted. The court gave the jury the following instruction: "The court instructs the jury that, if they believe from the evidence in this case that the plaintiff's distillery was seized and held by the defendants, or by their direction and authority, without there having been any violation of the law by the plaintiff, then they must find for the plaintiff such actual damages as he has sustained by reason of said seizure, not to exceed nineteen hundred ($1,900) dollars. In estimating such damages, the jury shall take into consideration the loss of profit sustained by the plaintiff, during the time his business was suspended; and the loss to him by damage to his credit and reputation; and as to each item they shall not, in any event, allow more than was stated in the bill of particulars as to each item." This instruction was objected to by the defendants, which objection was overruled and exception taken.

The jury returned a verdict in favor of plaintiff for $600, and the court, after refusing a motion by defendants to set the verdict aside, entered the following judgment in this case:

"T. J. Haymes, Plaintiff, v. Park Agnew et al., Defendants. Trespass on the Case.

"The motion of the defendants that the verdict be set aside and a new trial granted, having been argued by counsel, it is considered by the court that the said motion be, and it is hereby, overruled. It is further considered by the court that the plaintiff recover of the defendants the sum of $600, with interest thereon at the rate of 6 per centum per annum from April 16, 1904, until payment, and his costs in this behalf expended. And the court does hereby certify that the defendants, in making the seizure complained of, acted under the order of the proper officer of the government. It is therefore further ordered that no execution shall issue to enforce said above judgment against said defendants, or either of them; but said judgment shall be provided for and paid out of the proper appropriation from the treasury."

The case comes here by writ of error, sued out by the defendants.

Thos L. Moore, U. S. Atty. (John C. Blair, Asst. U. S. Atty., on the brief), for plaintiffs in error.

A. C. Edmunds and N. H. Hairston, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge (after stating the facts). The decision of the trial court in this case was based largely upon the construction which the judge presiding placed upon sections 970 and 989 of the Revised Statutes [U. S. Comp. St. 1901, pp. 702, 708]. In order to present the question fully, we give the two sections involved, which are as follows:

"Sec. 970. When, in any prosecution commenced on account of the seizure of any vessel, goods, wares, or merchandise made by any collector or other officer, under any act of Congress authorizing such seizure, judgment is rendered for the claimant, but it appears to the court that there was reasonable cause of seizure, the court shall cause a proper certificate thereof to be entered, and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution: Provided, that the vessel, goods, wares, or merchandise, be, after judgment, forthwith returned to such claimant or his agent."

"Sec. 989. When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him, or for any recovery of any money exacted by or paid to him and by him paid into the treasury, in the performance of his official duty, and the court certifies

that there was probable cause for the act done by the collector or other officer, or that he acted under the direction of the Secretary of the Treasury, or other proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the treasury."

The court below held that the two sections were inconsistent, and that their provisions were so repugnant that the latter statute necessarily, by implication, repealed the former; and, following up the reasoning, the conclusion reached was, in effect, that in every case of seizure in which there was a failure to secure a forfeiture, the owner or claimant of the property seized had a cause of action for damages, and that reasonable cause for seizure was not a defense to a recovery, but only a protection, personally, to the officer making the seizure. In other words, in every case of seizure, which was not prosecuted to judgment of forfeiture of property, the owner of the property is entitled to sue the seizing officer and recover judgment for damages, it being within the power of the court in which the recovery is had to certify that there was probable cause for the act done by the officer, or that he acted by direction of the Secretary of the Treasury, or other proper officer of the government; and thus transfer the liability for payment of the recovery from the officer to the government.

Examination of "An act to provide internal revenue to support the government, and to pay interest on the public debt," approved July 1, 1862 (chapter 119, 12 Stat. 432) and also of "An act to prevent and punish frauds upon the revenue; to provide for the more certain and speedy collection of claims in favor of the United States; and for other purposes," approved March 3, 1863 (chapter 76, 12 Stat. 737), will enlighten us as to the necessity for section 989, which is a provision of the latter act. Under the act first mentioned, which was enacted more particularly for the support of the government in the midst of the Civil War then in progress, internal revenue taxes were levied upon numerous subjects, many of them such as manufactured articles of goods, wares, and merchandise of various kinds, as well as foods and products. The means provided by the act for its enforcement were, in many instances, summary, authorizing collectors and deputy collectors of the internal revenue to make seizures of property and to hold it as forfeited to the United States for the non payment of taxes assessed upon it, and to proceed to its condemnation and sale without the intervention of the courts; in other instances, in cases of seizure for the violation or evasion of the law, proceedings in rem in the courts were provided. In some cases it is provided that there shall be an absolute forfeiture of the property, and in others a sale of the property, and after deducting the amount of taxes due and the expenses of the seizure and sale, that the remainder shall be turned over to the manufacturer or to the person in whose custody and possession the articles were when seized. This statute also provides for the intervention of the owner or claimant of the property, and its return to him in case no taxes are found to be due, or the causes of forfeiture are not sustained. Many of these subjects of taxation were perishable; many of a character such as to

make them liable to deterioration and consequent depreciation by being kept on hand, as they necessarily would be whilst under seizure and pending proceedings for sale or for condemnation. No matter how great care might be taken, property in custody might be destroyed by fire, lost or injured in transportation, or by some unavoidable accident when the officer was not in fault. Still, if the government fails to sustain its charges against the property the owner has his remedy to recover damages for the loss or injury. When we consider these subjects of taxation, and the powers conferred by the law for its enforcement, we can readily see the necessity for some provision by which an owner might recover damages for the loss or depreciation of his property, where there is a failure of condemnation, although the seizure was made by the officer in entire good faith, and upon reasonable grounds. It seems plain to us that the provisions of section 989 would apply in such cases. This section is a substantial reproduction of section 12 of the act approved March 3, 1863, above mentioned. By reference to this act it will be observed that it is devoted largely to the enforcement of the tariff laws and the collection of import duties. We think, however, that the law brought forward in the Revised Statutes as section 989, is sufficiently comprehensive to cover cases arising either under the tariff or the internal revenue laws of the government. The provisions of section 970 would be of no avail to the officer in a number of instances in which he might be sued for damages for an act done in the performance of his official duty, for the provisions of that section are confined solely to cases of seizure where there is a prosecution in court against the property seized. In such cases, although judgment is rendered in favor of the claimant, the court is empowered to have entered a certificate of reasonable cause for the seizure, and this prevents a recovery of the costs by the claimant, and also bars his action for damages against the person making the seizure, and the prosecutor, provided the property is forthwith returned to the claimant or his agent. Whereas, section 989 provides for the protection of the collector or other officer of the revenue from personal liability by reason of any act based upon probable cause, done by him in performance of his official duty or under the directions of the Secretary of the Treasury, or other proper officer of the government; and it also affords protection in cases of recovery against the collector, or other officer for money exacted by him, by virtue of his office, and paid into the treasury. Judge Wallace, in Hedden v. Iselin (C. C.) 31 Fed. 266, discussing section 989, has well said:

"However it may have been before, since the enactment of this provision it is plain that the laws of Congress do not contemplate the punishment of an officer of the revenue, by penalty or otherwise, for any act done in the honest discharge of his duty, or in obedience to the directions of the head of the department."

Both sections 970 and 989 have been frequently before the Supreme Court for construction and application. As far back as the case of Locke v. The United States, reported in 7 Cranch, 339, 3 L. Ed. 364, the provisions of the act of March 2, 1799 (1 Stat. 627, c. 22), which are substantially the same as those of section 970, being under consideration, the court held that:

"Probable cause means less than evidence which would justify condemnation; it imports a seizure made under circumstances which warrant suspicion."

The provisions of the 1799 Act were practically re-enacted in the act of February 24, 1807 (2 Stat. 422, c. 19) being section 89 of that act; and in the case of Gelston et al. v. Hoyt, reported in 3 Wheat. 246, 4 L. Ed. 381, there is a very full discussion of the rights of an officer making a seizure to defend, in an action of trespass, under his plea of justification, and the principle is also recognized there that probable cause for the seizure is sufficient to prevent recovery against him. These decisions, it is true, were before the act of March 3, 1863, in which the provisions of section 989 were enacted, but, since then, these two sections have time and again been involved in cases decided by the Supreme Court, and both of them have been treated by the court as existing law.

In Averill v. Smith, 84 U. S. 83, 21 L. Ed. 613, the decision was rendered nearly 10 years after section 989 first became the law (1863) and in that case, full recognition is given to the provisions of section 970. Many of the facts in Averill v. Smith are similar to those in the case now in hand: A collector of Internal Revenue seized a quantity of whisky, in barrels, as forfeited to the United States; an information was filed against it, and, under an order of the court, the property went into the hands of the marshal. The plaintiff appeared, and made claim that he was the true and bona fide owner of the property, and filed his answer, denying the material allegations of the information, to which the district attorney replied, tendering an issue. Upon the trial the jury found that the property did not become forfeited as alleged in the information. The court rendered judgment in favor of the claimant that the property be discharged, but at the same time adjudged and certified that there was probable cause for the seizure. It was held in the case that an action of trespass, after this certificate, would not lie against the collector, by virtue of the provisions of section 89 of the act of February 24, 1807 (chapter 22, 1 Stat. 695), which, as before stated, is brought forward in the Revised Statutes as section 970. Referring to the facts in the case, the court lays down, substantially, the general proposition so often repeated, that trespass will not lie in a case for the act of seizure, unless it appears that the act was tortious, or unauthorized; and says, referring to defendant:

"As such collector had good cause to believe, and did believe, that the property described in the information was forfeited to the United States for the illegal act of the owner, he was warranted in making the seizure."

Then, in United States v. Sherman, 98 U. S. 565, 25 L. Ed. 235, the court gives construction to section 989, and Mr. Justice Strong, delivering the opinion in the case, says that when the certificate provided by this section is given, the claim of the plaintiff in the suit is practically converted into a claim against the government. In United States v. Abatoir Place, 106 U. S. 160, 1 Sup. Ct. 169, 27 L. Ed. 128, section 970 is again considered, and it is set forth, verbatim, in the statement of facts in the case; the decision in the case being that the action of the District Court, in denying the motion of the United States for a certificate under the provision of the act, was not reviewable by the Supreme

Court. Then comes Schell v. Cochran, 107 U. S. 625, 2 Sup. Ct. 827, 27 L. Ed. 543, which involved the question of interest where a certificate had been given by the court of probable cause, under section 989, in a judgment against a seizing officer, it being held that interest could not be recovered against the United States, except from the date of the certificate.

These cases are mentioned in order to show that both of these sections have been frequently before the Supreme Court, and that no suggestion has been made that 989 in any way affected or interfered with the provisions of 970. The judge of the court below, in a very learned opinion, which shows great research and much thought, cites several of these cases. As to Averill v. Smith, supra, which we regard as a case of important bearing upon the questions involved here, he came to the conclusion that 989 had not been called to the attention of the Supreme Court when the case was under consideration, and he took the same view as to the case of Stacy v. Emery, 97 U. S. 642, 24 L. Ed. 1035, which we shall hereafter refer to. We think, too, that the case of Harding v. Woodcock, 137 U. S. 43, 11 Sup. Ct. 6, 34 L. Ed. 580, is important in that it shows that reasonable cause for action will avail an officer, although there was no proceeding under section 970. That was a case in which an assessment was made against a distiller for taxes. The Commissioner of Internal Revenue, upon application of the distiller, refused to abate the taxes, and instructed the collector to collect them. Thereupon the collector, under warrant of distraint, seized the property of the distiller and sold it. A suit was brought by the government, upon the bond of the distiller, for the taxes, and, upon the trial, the government was defeated. Thereupon the distiller brought his action against the collector for alleged wrongful seizure and sale of his property. The court held that the tax assessment certified to the collector by the Commissioner of Internal Revenue was a complete protection to him. As before stated, this case was entirely outside of the provisions of section 970. It was a case in which the judge could neither give nor refuse a certificate of reasonable cause, under that section, because the property was seized and sold without ever being in the courts; and yet, in that case, the court held that, if the officer's action was founded upon reasonable cause (and a tax assessment properly made and certified to him was held to be reasonable cause), he could not be subjected to damages at the instance of the distiller, who claimed that he was injured on account of the seizure of his property. Gould & Tucker, in their notes upon the Revised Statutes of the United States (volume 1), treat of sections 970 and 989 both as existing law, citing decisions under the two statutes; and there is no intimation that the one repeals the other, or that they are at all inharmonious.

In order to support the theory that both sections 970 and 989 are the law, each having its separate and distinct purposes, besides the instances already mentioned of the seizure of property under the original internal revenue law, in which the property, by its detention, may perish or become depreciated in value before its return to the owner, we may call attention to seizures under section 3460 of the Revised

Statutes [U. S. Comp. St. 1901, p. 2282]. By the provisions of this statute, if a collector of internal revenue seizes property, which he believes has violated the law so as to become forfeited, of the value of $500 or less, the case is not transferred to the district attorney for action, by a proceeding in rem, unless a claimant intervenes and files bond for costs. Let us take a case under this section, in which the collector, acting upon reasonable cause, makes a seizure, but afterwards, upon investigation, determines that the cause which he believed to exist at the time of the seizure cannot be sustained, and, without further action, releases the property, and returns it to the owner. In such case, if the property is restored intact, the owner could not recover damages for its seizure and detention; but if, on the other hand, the property was lost or injured whilst in custody of the collector, without his default, the owner would have a right of action in which he would be entitled to recover for the actual value of the property lost, or the injury to it, and, upon such recovery, the court, by virtue of the provisions of section 989, could certify the reasonable cause for the seizure and the liability for payment of the damages recovered would be upon the government. And the same principle would apply to an officer of the internal revenue, under section 3298 of the Revised Statutes [U. S. Comp. St. 1901, p. 2153], which empowers such officer to take possession of and detain any package containing, or supposed to contain, distilled spirits, when there is reason to believe that the tax has not been paid on the spirits, or that the same is being removed in violation of the law, and to hold the package not exceeding 48 hours, in a safe place, until he determines that the property should be proceeded against as forfeited. Suppose, for illustration, that an officer finds conditions about a package of spirits which lead him to the conclusion that it is untaxpaid, or that it is being unlawfully removed; and under this belief, he detains the package, but after investigation decides that the case is not sufficiently strong to warrant a forfeiture, and returns the property to the owners: Will any one contend that in a suit by the owner for damages for the seizure and detention of his property, the officer could not protect both himself and the government by showing that the conditions at the time of the seizure were such as to constitute probable cause, and to afford reasonable ground for the seizure? We think not. And yet, if the property was lost or injured during its detention, by the negligence or fault of the officer, he would be personally liable to the owner; but if, on the other hand, such loss or injury should occur by accident or circumstances over which he has no control, the owner would still be entitled to recover the value of his property, or such damages as resulted from the injury; and this would be a case in which the court could protect the officer by the certificate provided under section 989. Thus we see that these two sections are not inconsistent or repugnant, 970 being intended to prevent prosecutions for damages in cases of proceedings in court for forfeiture, which fail, but in which the judge certifies reasonable cause, and the property under seizure is forthwith returned to the claimant or his agent; and 989 being intended to meet other cases in which there is reasonable cause for the action of the officer

but in which the owner of the property seized recovers damages for its loss or injury. The purposes of the provisions of the act of March 3, 1863 (now section 989) are further evidenced by the act of July 28, 1866 (chapter 298, 14 Stat. 328), by which the said provisions are extended to embrace cases arising under the captured and abandoned property laws. The protection afforded by section 989 is confined to officers of the revenue, whilst section 970 applies to all seizures under any act of Congress; and the latter has been the law of the land almost since the foundation of the government.

In the present case there was a proceeding in rem which was dismissed without trial, or hearing upon the merits. No certificate under section 970 was given, nor does it appear that any was asked, and the question to be determined is as to what protection a seizing officer has under such circumstances. We hold that the right of the officer to defend under the plea of reasonable cause is not destroyed by such a proceeding, but that in an action brought against him by the owner of the property for the recovery of damages based upon the unlawful and wrongful seizure of the same, the officer still has the right to interpose his plea of reasonable cause for his action; and, if it is adjudged in his favor, the plaintiff cannot recover. For this reason we conclude that the trial court was in error in refusing to instruct the jury as requested by defendants, which was, in substance, that if, at the time, the defendants had reasonable cause for the seizure, the plaintiff could not recover; and the court, in our opinion, under the circumstances, should have gone further and instructed the jury that the order of the Commissioner of Internal Revenue to the collector of the district, directing him to make the seizure, was, in law, reasonable cause, and a protection to the defendants against damages for their action. "The question of probable cause, the facts being undisputed, is one of law." United States v. Gay, 2 Gall. 359, Fed. Cas. No. 15,193. The facts here were uncontroverted that the officers of the internal revenue had examined Haymes' distillery, and had found in and about it conditions which led to the belief that it was not being operated according to law, and that the government was being defrauded of the taxes upon its product. The report of the revenue agent to the commissioner, set out in full in the record, and which was introduced in evidence upon the trial, shows this fact. Upon this report the commissioner came to the conclusion that the distillery and fixtures, and the distilled spirits on hand, were forfeited to the government; and we must say, upon the conditions about the distillery, which the report of the revenue agent shows, it was such a conclusion as would be naturally arrived at.

In Munn v. De Nemours, 3 Wash. C. C. 37, Fed. Cas. No. 9,926, which is reiterated and approved in Stacey v. Emery, supra, probable cause is held to be "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged", and in the last named case the opinion quotes from Ulmer v. Leland, 1 Greenl. 135, 10 Am. Dec. 48, the following upon the same subject:

"Such a state of facts as would lead a man of ordinary caution to believe or to entertain an honest and strong suspicion that the person is guilty."

If the defendants acted bona fide, and the seizure was based upon reasonable cause, then every element of damages, save those of actual loss of the property, or injury to it whilst in custody, was eliminated. Otherwise, in every criminal proceeding, where an arrest is made, although the officer making it may act in perfect good faith, and be armed with the process of law, yet, if the prosecution should fail, the person arrested would have the right to recover from the officer damages for injury resulting to his character and business reputation by reason of the arrest.

It is a recognized principle of the law, in cases of seizure and forfeiture under the revenue laws, that it is the property, and not the owner which offends. The property is treated as the defendant in the proceedings—as a thing guilty, susceptible of being tried and condemned, whilst, as is said by the law writers, the owner merely gets notice along with the rest of the world, and may appear for his property or not. It follows, therefore, if an officer, armed with the proper process, or authority, arrests property upon the charge that it has offended the law, the same principles protect him as in cases of the arrest of individuals. It is not a rare occurrence that individuals are arrested, held in custody—sometimes incarcerated, and yet, upon the trial, they are acquitted. However, if the officer making the arrest was duly authorized, and acted within the limits of his duty, he cannot be mulcted in damages for the arrest and consequent injury to reputation and business credit. In the enforcement of the revenue laws, an officer, within the scope of his authority, and with proper process in his hand; or, under circumstances affording reasonable cause, has the right to arrest property and hold it as forfeited to the government for a violation of its laws. In such case, although the proceeding to condemn may fail, yet the officer cannot be subjected to damages, based alone upon alleged injury to the credit and reputation of the owner, resulting from the seizure and detention of his property, and consequent suspension of the business in which the property was engaged; and in no event can the government be subjected, either directly or indirectly, to the payment of such damages. The commissioner is the head of the internal revenue bureau, invested by law with the power to exercise his judgment and discretion in the administration of the responsible duties which attach to his position. It is his duty, as far as possible, to see that all laws and regulations relating to the collection of internal revenue taxes are faithfully executed and complied with, and to use the instrumentalities provided him in the prevention, detection, and punishment of fraud in relation thereto. The law gives him the right to order a seizure when, in his opinion (based upon information derived from his agents and other sources which he deems reliable), the property has become forfeited—indeed, he is empowered by section 3166 of the Revised Statutes [U. S. Comp. St. 1901, p. 2058] to specially authorize any officer of the internal revenue to make a seizure. It was in the exercise of this power that the commissioner gave the instruction to the collect-

or to make the seizure of Haymes' property. This instruction was not only sufficient warrant to authorize the defendant Agnew to make the seizure, but it made it his duty to do so, as a subordinate officer receiving a mandate from his superior. It follows, therefore, that if the superior officer had cause which in law would justify his act, his order, which his subordinate was required to obey, is a protection to the latter. Upon the principles which we have laid down, we not only hold that there was error in the refusal of the court to give the instructions requested by the defendants, but that there was also error in the rule laid down by the court to govern the jury in estimating the damages, which was as follows:

"The jury shall take into consideration the loss of profit sustained by the plaintiff during the time his business was suspended, and the loss to him by damage to his credit and reputation; and as to each item they shall not, in any event, allow more than was stated in the bill of particulars."

It will be observed that the plaintiff below, in his declaration, set up as one of his causes of action the loss of a quantity of distilled spirits, and also claimed damages for alleged injury to his machinery and fixtures whilst held under the seizure, but, in his amended bill of particulars, both of these grounds are omitted, and in the testimony on the trial no reference is made to the loss of the spirits, or to the depreciation of the property, the evidence relating substantially to damages alleged to have resulted to the plaintiff by reason of the closing of his distillery, and the loss of profits from its operations whilst in custody; and damages for alleged injury to his reputation and credit, caused by the suspension of his business. Thus it appears that finally the plaintiff sought to recover damages only for these causes, and the instruction above quoted was given in view of that fact. The grounds upon which we conclude this instruction was error have been, we think, already sufficiently discussed, and it is not, therefore, necessary to repeat them here. It is evident, from the facts we gather from the record, that the suit which the plaintiff below had brought against S. Brown Allen and the Fidelity & Deposit Company, the recovery in which was set up by the defendants as a bar to the present action, but which, as appears in the statement of facts, was not considered in the trial, was a suit for the value of the spirits alleged to have been lost, and for damage to the property whilst in custody; and this accounts for the abandonment of these elements of damage in the trial below. We take official notice of the fact that S. Brown Allen was, at the time, United States Marshal for the Western District of Virginia; and the record shows that the Haymes property was taken in custody by him about the time the proceeding in rem was commenced.

In the bill of particulars $50 is claimed for amount paid out in having property released from seizure, but the testimony of Haymes shows that this was composed of the fee paid to his attorney, and the outlay which he claims to have made in attending court. The judge, in his charge to the jury, made no mention of this claim for damages, and it probably was not considered; but, however that may be, it falls within the principles which we have before stated, and is not recoverable in this case. The reference we make to the suit of Haymes

against Brown and the surety company is more explanatory than otherwise, it being our purpose to base our decision in this case upon the principle that the defendants, having had reasonable cause for the seizure of Haymes' property, cannot be subjected to damages for the suspension of the business of the distillery whilst it was in custody, during the pendency of the proceeding in rem, nor to damages for alleged injury to business reputation and credit of the owner, as a result of the seizure and detention of the property. This disposes of the questions raised by exceptions to the judge's charge, which we are now considering.

The judgment of the Circuit Court is reversed, and the case remanded for such proceedings as may be necessary, in accordance with this opinion.

Reversed.