## PAUL McHENRY v. STATE.

No. A-9224.  June 4, 1937.
(69 Pac. [2d] 90.)

E. W. Snoddy and H. C. Crandall, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and L. Z. Lasley, Co. Atty., of Alva, for the State.

BAREFOOT, J.  The defendant was tried in the district court of Woods county where he was charged with the crime of illegal possession of over 58 pints of intoxicating liquor, in and near his farm home.  He had previously pleaded guilty in the county court to the charge of illegal possession of liquor on the same premises and had served a sentence of 30 days in jail and paid a fine of $50.  He was tried as a second offender under section 2632, O. S. 1931 (37 Okla. St. Ann. § 12), which provides:

"For the second and all subsequent convictions for the violation of any of the provisions of this act, the penalty shall be a fine of not less than fifty ($50) dollars,

nor more than two thousand ($2,000) dollars, and by imprisonment of not less than thirty (30) days in the county jail, nor more than five (5) years in the state penitentiary, and it shall be mandatory upon the trial judge in cases where anyone has been convicted under any provision of this act, to pronounce sentence within ten days from the date of conviction."

He was found guilty and given a sentence of one year in the penitentiary and a fine of $50.

Defendant's first assignment of error is that the court erred in failing to sustain his motion to suppress the evidence secured upon the search warrant, for the reason that the same was illegal and void. The motion to suppress was heard before the trial of the case and evidence was taken thereon. The affidavit made by the deputy sheriff, which was the basis of the issuance of the search warrant, was as follows:

"Comes now Nels Nelson, of lawful age, who being first sworn, upon his oath deposes and says: That intoxicating liquors are being sold, bartered, given away and otherwise furnished; and are being kept for the purpose of selling, bartering, giving away and otherwise furnishing in violation of the laws of the State of Oklahoma, by certain persons to wit; one Paul McHenry in certain buildings, to wit; the buildings, houses, barns, caves, silos, and appurtenances thereunto belonging, located on the south half of the northeast quarter of section 3, township 27, range 14, in Woods county, state of Oklahoma; the same being in part a private residence and that which is a private residence the same is a place of public resort.

"That said complaint and affidavit is made for and on account of the following, to wit:

"That affiant is personally acquainted with the above described premises; that numerous persons are seen to go to said premises in a sober condition and to leave in an intoxicated condition; that numerous automobiles are seen

to go to and from said premises at all hours of the day and night, the occupants of which are persons who are known to indulge excessively in the use of intoxicating liquors; that affiant personally knows of his own knowledge that whisky is now at this time, stored on said premises and is there being kept for sale, contrary to the laws of this state and affiant further states that said Paul McHenry has been prior hereto, convicted of violating the prohibitory laws of this state;

"Wherefore, affiant prays that the Judge of the said county issue a search warrant, in accordance with law, directing that the sheriff, or his deputy, of Woods county, Okla., or a constable, marshal, or a policeman of the city of Alva, said county and state, search the premises and places hereinbefore described, and seize all liquors, vessels, implements, fixtures and other property used in the violation of the laws of the state of Oklahoma."

Nels Nelson testified that he was a deputy sheriff in Woods county, Okla.; that he made the affidavit for the search warrant. He further testified that he accompanied the sheriff of Woods county to the home of defendant on the 12th day of November, 1935, and assisted in the search of the place where they found over 58 pints of whisky. With reference to the procuring of the search warrant he said:

"Q. Where did you get your information on which you made the affidavit for search warrant? A. John Mackey owns the place right south of his and the line runs along near the place and I have been along that line there many times and have seen cars come and go and have heard them come in there and could hear them call for different brands of whisky and could see Mr. McHenry hand them something; I have been along the section line there and have seen people going to and coming from his place, and have arrested men along the section line there and throwed them in jail."

He further testified:

"Q. You had been there shortly before you searched the place? A. Not on his place; the house sits right close to the line on the south side of the 80 acres. Q. For all you know, he may have had this liquor? A. I know men were taking it away from there. Q. How many nights did you lay out there? How many nights had the law been laying out there? A. I lay out there several nights before I caught him. Q. Did you see them pay him any money? A. I saw them hand him something. Q. You don't say that it was money? A. No, sir; I heard them ask for 'Seagrams' and saw one of them reach in his pockets and hand him something. Q. You don't know whether he was handing him any money or not? A. I don't know what he was giving him. Q. Could you see what he gave them— whether he gave them what they called for? A. No, sir, a man would call for a pint of Seagrams and then he would go around the house and come back and hand him something and they would leave. Q. You don't know whether it was liquor he handed them or not, do you? A. I would see them drinking liquor down the road after they left there. Q. You didn't see him hand them any liquor, did you? A. I heard them call for whisky and he went around the house and came back and would hand them something and they would leave. Q. How long was that before you served the search warrant? A. It was some two or three days. There was six cars that night before I got the search warrant. Q. The purpose of your hiding where you were at that time wasn't that for the purpose of getting information so you could make an affidavit to obtain a search warrant? A. Yes, sir. It was. Q. Do you know what 'Seagrams' is? A. It is a brand of whisky. Q. A kind of whisky that is being sold? A. Yes, sir, Seagrams is a kind of whisky. There is 17 bottles of Seagrams in there. Q. Did you hear them calling for any other brand of whisky out there? A. Yes, sir, I heard them call for Golden Wedding. Q. Any other brands? A. I remember 'Kesslers.' "

Ken Greer testified that he was the sheriff of Woods county and that he conducted the raid on defendant's

home on the night of November 12, 1935, and that they found over 58 pints of liquor. He further testified:

"Q. You never saw anyone coming there and getting liquor? A. Yes, sir. Q. When was it? A. Several times. Q. Then you were out there alone sometimes? No, sir, I was along, but I hid away out east of the house along the highway, east of the house along the river bridge. Q. Did you ever see him deliver any whisky to any one; sell people whisky? A. No, sir, I didn't. Q. You never saw any crowds or money exchanged? A. No, sir. Q. Did you see people out there? A. Yes, sir. Q. Would there be women with them sometimes in their cars? A. Yes, sir, I have seen women. Q. Did you see couples out in there? A. Yes, sir, I have seen them driving in there. Q. You don't know what their purpose was, do you? A. I have seen people going there in a sober condition and come out in an intoxicated condition."

We have examined the cases cited by defendant to support his contention that this case should be reversed. The cases cited are: Hannan v. State, 29 Okla. Cr. 203, 233 Pac. 249; Gore v. State, 24 Okla. Cr. 394, 218 Pac. 545, 550; Foster v. State, 27 Okla. Cr. 270, 226 Pac. 602; Baker v. State, 28 Okla. Cr. 408, 231 Pac. 320; United States v. Kaplan (D. C.) 286 F. 963, 964.

A careful reading of these cases reveals that they are very different from the facts in the instant case. In those cases the affidavit is made upon information and belief. In the instant case the affidavit of the officer is not only positive, but it states the facts upon which his affidavit is based. It is not mere conclusions, as stated in defendant's brief, but the evidence of this officer shows that he had obtained direct information that the law was being violated in the most flagrant manner by the defendant, before he made the affidavit to secure the warrant for the purpose of searching defendant's premises. The case of

Baker v. State, supra, cited by defendant, sets out a form as to what a search warrant should contain. The above search warrant complies with this form in a very substantial manner. We think the officers are to be commended for the precaution they took in protecting the rights of the defendant in this case before they made an affidavit for the search warrant. They knew the defendant's previous record. They procured information that would satisfy any court that this defendant was violating the sanctity of his home and fireside by using it as a place of public resort, where people could come and purchase from him intoxicating liquors in violation of law. This court has gone a long way in upholding the privacy and sacredness of the home. It has even stood the storm of criticism by partisans who believe that every sacred right of the individual to be secure in his home from illegal search and seizure, under the state and federal Constitutions, should be wiped out of existence, where the liquor laws are involved. But following the decisions of the Supreme Court of the United States in construing the federal Constitution, which is very much the same as the Oklahoma Constitution, this court, before I assumed my duties as a member thereof, has strictly adhered to the doctrine that the rights guaranteed to the citizen under the Constitution were far more sacred than the punishment of a few individual bootleggers. As was said by a justice of the Supreme Court of the United States:

"Such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law." Gouled v.

United States, 255 U. S. 298, 41 S. Ct. 261, 263, 65 L. Ed. 647.

This court, in the case of Gore v. State, supra, says:

"The right of a state court to construe its own Constitution may be conceded, but when doing so the construction given like provisions in the federal Constitution by the United States Supreme Court should be more than persuasive, especially where the holding of the highest court is in full accord with the primary purposes of such provisions, that is, to safeguard the tranquility and sanctity of the home and to minimize interference with private affairs. * * *

"It was not the purpose of these constitutional provisions to build a wall behind which criminals could hide and escape punishment. Some of them do and will escape, but better so than to disregard these safeguards designed to protect the innocent from being harassed and annoyed, and sometimes abused, by trespassing officers."

But, when the court finds that an officer has been just as zealous to protect the rights of a citizen in the sacredness and privacy of his home as they are to enforce the law as shown by the facts in this case, they are to be commended. This defendant, by the use of his home as a place where intoxicating liquor was stored and kept for sale in the very presence of his wife and seven children, had forfeited all of those rights guaranteed him by the Constitution, and, when the proof was submitted as it was in this case, it then became the imperative duty of the court to issue the search warrant for the purpose of searching defendant's home and buildings used in connection therewith. We find no error in the overruling of the motion to suppress the evidence procured under the search warrant in this case.

The contention of the defendant that the search warrant was illegal for the reason that the officer went upon

the premises prior to securing the same for the purpose of securing information upon which to base his affidavit to secure the search warrant is refuted by the evidence of the officers. They testified that they were not on the premises of defendant at the time the information was received, and they gave facts which show clearly that this information was received in a proper and legitimate manner. They saw people in automobiles going to defendant's home sober and returning drunk. They arrested them upon the highway. They saw people come to the home of defendant, get out of their cars, ask for "Seagrams" and other brands of liquor, and saw defendant secure a package and give it to them and the same parties hand something to defendant. They knew defendant's past record. The fact that defendant had rented adjacent land for the purpose of grazing a few calves is no reason why the officers should not go thereon for the purpose of obtaining information.

It is next contended by defendant that the punishment assessed against him in this case is harsh and unjustified. In their brief, counsel for defendant say:

"Never before has such a harsh sentence been imposed upon anyone in this county for a second violation of the liquor laws; and particularly upon so young a man, who is married and has a wife and seven children to support.

"If he is required to serve a term in the penitentiary, it may embitter him rather than reform him; and after all the sole and only purpose that can be served in an imprisonment is that of reformation."

In the following cases this court has affirmed sentences where defendant was a second offender, which inflicted higher penalties than in this case. See Gerdner v. State, 39 Okla. Cr. 68, 262 Pac. 1077; Rogers v. State,

458

34 Okla. Cr. 15, 244 Pac. 461; Hildebrandt v. State, 19 Okla. Cr. 30, 197 Pac. 852; Leasure v. State, 46 Okla. Cr. 70, 283 Pac. 1023.

This defendant seemed to be determined not to be reformed. He not only continued the sale after his first conviction, but turned his home into a place of public resort where old men and young men and women could go for the purpose of securing intoxicating liquor in violation of law. This in the very presence of his wife and children. Under these circumstances, we do not think the punishment was too severe. The maximum punishment under the statute was five years in the penitentiary and a fine of $2,000. A jury in his own county gave him a sentence of one year and a fine of $50.

The judgment of the district court of Woods county is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.