# H. W. SPIKES v. STATE.

No. A-9370. Dec. 2, 1938.

(85 P. 2d 327.)

Clyde G. Pitman and Randall Pitman, both of Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Thos. C. Wyatt, Co. Atty., of Shawnee, for the State.

BAREFOOT, J. The defendant was charged in the county court of Pottawatomie county with the unlawful possession of intoxicating liquor, was tried, convicted, and sentenced to pay a fine of $300, and serve 90 days in jail, and has appealed.

Two propositions are urged for reversal of this case, and we deem it necessary to consider but one of these. It is contended that the affidavit upon which the search warrant was based was insufficient, for the reason that:

"The affidavit for search warrant was insufficient upon which to base the issuance of the search warrant for the reason that the same stated no facts tending to establish probable cause; the affidavit being a stock form used in making all kinds and character of searches and

nowhere contained a statement of any facts that would justify the search of an automobile."

While we do not desire to unduly lengthen the opinion in this case, we desire to set out in full the affidavit upon which the search warrant was based. We are doing this so the attorneys and sheriffs of this state may be more considerate in the preparation of search warrants, which are to be used for the purpose of searching the property of the citizens of this state. The statutes, and the decisions of this court in construing the same, have gone a long way in permitting the search of the home, the automobile, and the private premises of the citizens of this state. To uphold the affidavit and search warrant in this case, would be setting the precedence for the search of automobiles of the citizens of this state without giving any reason, and upon mere suspicion and the statement of conclusions. If carried to a logical conclusion would cause the embarrassment of many honest citizens who never at any time violated the law. Oklahoma Statutes, 1931, sections 2635, 2639, and 2640; Oklahoma Statutes Annotated, Title 37, sections 84, 88, and 89; McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135. But certainly there are fundamental rights which should be safeguarded, and the officers of the law should be first to properly guard those rights. The law requires that search warrants should be strictly construed. This, of course, does not mean that there should be a technical construction which would defeat the ends of justice, and permit the guilty to escape, but it does mean that every citizen should be protected in the use of his property so long as he does not use the same for a violation of the law. It follows, therefore, that the officers of the law should follow the law, and the decisions of this court, in construing the same, before being permitted to search the premises and property of the citizens of this state. If the terms of the statute are followed there would be

fewer reversals, and the rights of the citizenship of this state would be more fully protected. The decision in any individual case is not the law for that case alone but applies to all cases where the facts may be the same. The affidavit in this case was as follows:

"Before me, W. F. Durham, Justice of the Peace, in and for Pottawatomie County, Oklahoma.

"In re: Application of Elza Evans, Sheriff for Search Warrant.

"State of Oklahoma, Pottawatomie County, ss.

"Elza Evans, being first duly sworn, on oath, states that there is kept and possessed a still worm, and a still, without the same first being registered with the proper United States officer and a certificate of such registration filed with the County Clerk of the above named County and State, in violation of the law of the State of Oklahoma; and,

"That a distillery is had and possessed, set up and used, for the purpose of manufacturing by some process of fermentation and distillation distilled spirits, including whisky, beer, ale and wine, and imitations thereof and substitutes therefor which contain as much as one-half of one per cent alcohol, measured by volume, and capable of being used as a beverage, the sale, barter and giving away of which is in violation of the laws of the State of Oklahoma; and,

"That there is had and possessed compound mixtures fit for distillation, to wit: mash, wort, and wash, for the manufacture of intoxicating liquors, including whisky, beer, ale and wine and imitations thereof and substitutes therefor, which contain as much as one-half of one per cent alcohol, measured by volume and capable of being used as a beverage, the sale, barter, giving away and otherwise disposing of same is prohibited by laws of the state of Oklahoma; and,

"That spirituous, vinous, fermented, and malt liquors, including whisky, beer, ale, and wine, and imitations thereof and substitutes therefor, which contain as

much as one-half of one per cent alcohol, measured by volume, and capable of being used as a beverage, is being manufactured by some process of fermentation and distillation, in violation of the laws of the State of Oklahoma; and,

"That spirituous, vinous, fermented, and malt liquors, including whisky, beer, ale, and wine, and imitations thereof and substitutes therefor which contain as much as one-half of one per cent alcohol, measured by volume, and capable of being used as a beverage, is had and kept for the purpose of sale, barter, giving away and otherwise furnishing the same; and that same is being sold, bartered, given away, and otherwise furnished, in violation of the laws of the state of Oklahoma, in the above named county and state, in and upon the following described premises, to wit:

"A certain 1937 Plymouth Coop Okla. License Year 1937 Tag No. 102-672 Pottawatomie County State of Okla.

"Affiant further states that the basis of this complaint and the facts upon which it is founded are as follows: That said premises so described aforesaid bear the general reputation of being a place where intoxicating liquors, to wit: whisky, wine and beer are had, possessed, kept, and received for the purpose of sale and are sold; that numerous persons whose true and correct names are to this affiant unknown have been seen to enter said premises in a sober condition and later stagger forth from said place under the influence of intoxicating liquors, that numerous persons whose true and correct names are unknown to this affiant congregate in and resort to said premises at all hours of the day and night for the purpose of buying, selling and drinking said intoxicating liquors; that numerous persons whose true and correct names are to this affiant unknown have been seen to leave said premises at all hours of the day and night carrying bottles from which they have been seen to drink the contents and the bottles after having been cast aside were examined and bore the odor of intoxicating liquor to wit: alcohol and whisky; that different individuals have been seen on said premises drinking from bottles and immediately after drinking have been seen to stagger from intoxication and heard

.to talk in a thick toned manner; that said premises are frequented by habitual drunkards and constitute a public nuisance, and that said premises are used as a public resort."

Based upon the above affidavit a search warrant was issued by a justice of the peace, and defendant's car was searched on the streets of Maud, Pottawatomie county. Defendant was not in the car at the time but he was found upon the streets, and was arrested and the keys to his car taken from his person prior to the search. There was found in the car 105 pints of whisky. The sheriff at the hearing on the motion to quash the search warrant, and at the trial of the case, testified that he had seen the defendant in the town of St. Louis about 5 o'clock in the afternoon before he was arrested; that he saw him go in the car to a certain house, and return; that he left and went to Shawnee and got the search warrant and returned to Maud and executed it about 8:15 p. m. With all of the above knowledge on the part of the sheriff, how easy it would have been for him to put the facts in the affidavit he made to secure the search warrant. No doubt the sheriff was in possession of other facts which he could have easily set up and which would have been a basis for the court to have legally issued the warrant. If he had seen the defendant enter the car with a package which the sheriff believed was intoxicating liquor, or if defendant had prior to that time been charged or convicted of a violation of the liquor laws, or if his general reputation was that of a bootlegger, or that defendant was conveying liquor, these facts could have been set up in the affidavit. But this was not done. An old stock form of affidavit was procured, which set up facts that could not possibly be true, and no facts were stated which gave information to the justice of the peace, that defendant was using the automobile for the purpose of illegally conveying intoxicating liquor, or in violation of any law. The name

of defendant was not even mentioned in the search warrant. The wife of defendant could have been in possession of the car upon the streets of Maud, and under the search warrant it could have been searched, even though she be ever so innocent. Certainly it is a proper safeguard for the courts to hold that before a search warrant shall issue the facts shall be stated in the affidavit upon which it is based, which gives the court a right to issue the same. The party making the affidavit in this case, when placed upon the witness stand, could not testify whether he signed the affidavit at the sheriff's office and sent one of his deputies to the office of the justice of the peace to procure the same, or whether he went himself. The affidavit and search warrant both used the terms "beer * * * which contained as much as one-half of one per cent. of alcohol," while the statute of this state now provides for the legal possession of malt liquors containing as much as 3.2 per cent. of alcohol. This only goes to show that in the making of the affidavit in this case there was an utter disregard of the law and of the decisions of this court. We do not undertake to hold that there might not be allegations in a search warrant which could be considered as redundant or as cumulative, but to hold that the affidavit in this case was sufficient would be a travesty on justice. The allegation that the automobile was being used as a place "for distilling and manufacturing liquor," and that "numerous persons, whose true and correct names to this affiant are unknown, have been seen to enter said premises in a sober condition and later stagger forth from said place under the influence of intoxicating liquors," and other similar allegations, shows clearly that the affidavit was not made upon any foundation of fact, but was simply made as a subterfuge, for the purpose of searching the automobile in question. It is not a question here as to the guilt or innocence of this defendant and the amount of liquor secured under the search warrant,

but the fundamental question is that the law recognizes that the officers of this state should follow the law before seizing and searching the property of the citizens of this state. It is for this reason that the Constitution of this state, article 2, sec. 30, Okla. St. Ann. Const. art. 2, § 30, provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

For the reasons above stated, we are of the opinion that the motion to suppress the evidence should have been sustained, and it is so ordered, and this case is reversed with directions to dismiss, unless in the judgment of the county attorney he has sufficient competent evidence upon which to secure a conviction of defendant.

DAVENPORT, P. J., and DOYLE, J., concur.