## ROY MORRIS v. STATE.

No. A-9518.  June 30, 1939.
(92 P. 2d 610.)

Gerald Spencer, of Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

DAVENPORT, J. By information the defendant was jointly charged with his wife, Mrs. Roy Morris, in the county court of Grady county with the unlawful possession of intoxicating liquors, the same being liquor that contained more than 3.2 per cent. alcohol, measured by weight, and being capable of being used as beverage.

Mrs. Roy Morris was acquitted by the jury. The defendant Roy Morris was convicted, and sentenced to pay a fine of $250, and to be confined in the county jail for 90 days. From the judgment and sentence, the defendant Roy Morris has appealed.

The substance of the testimony in this case is as follows:

H. W. Enos and Bert Huddleston, patrol officers, were on Highway No. 81, south of Chickasha, and testified they saw the car in which the defendant, his wife, and small son were riding, coming toward Chickasha, and it had only one headlight. They stopped the car, checked it, and gave them a ticket to have the light fixed within 48 hours. The parties went on, and the two witnesses named herein turned their car around and followed them.

The defendants stopped at a filling station near Chickasha to have their lights corrected. These officers followed them back to where they stopped, and testified that in driving along the highway, the defendant's car would swing back and forth from one side of the road to the other. There is no testimony by the state that any one was coming, meeting the car of the defendants, or was trying to pass, or passing the defendants' car, nor is there any testimony offered by the state showing the driving of the defendants' car, as the proof shows, by Mrs. Roy Morris, endangered the life of any one on the highway.

The testimony shows by the two officers that when the defendants stopped at the garage or the place to have the headlights fixed, they had followed the defendants, and drove up by the side of the defendants' car, and wanted to know why the car had been driven from one side of the road to the other. Mrs. Morris informed them that the baby boy was in her lap, and she was trying to roll up the window, was the cause of the passing from one side of the road to the other, if it did swing back from one side of the road to the other.

The defendant Roy Morris was sitting in the car, as shown by the record. No complaint is made that he was disturbing anybody's peace or that Mrs. Morris was disturbing anybody's peace, or that any arrest was made for any violation of the traffic laws of the state. But the officers testifying say after they talked with Mr. Morris, they smelled whisky on his breath, and had him get out of the car to ascertain if it was whisky.

The parties state that the car the defendants were driving was a 1936 Chevrolet.

One of the officers said that he asked the defendant Roy Morris to get out of the car, that he wanted to see whether or not he was drunk, and that Morris got out. The officer then contends that when Morris got out, he looked in the door of the car, and saw a bottle of whisky in the rear on

the floor, back of the front seat of the car. There were no lights in the car, and the officers had no flashlight, yet he claims that he could see in the car, back of the seat, where the packages were on the floor, and could tell that he saw whisky. There was a light out somewhere in front or around the garage which he claims enabled him to see in the car.

The officers offer no excuse or justification for them demanding that the defendant Roy Morris get out of the car, or that they had any right to demand him to get out of the car. They admit they had no warrant for his arrest, or to search his person or his car at the time they demanded him to get out of the car.

The foregoing is the substance of the testimony, and clearly shows that while the officers found whisky in the car, they forced the defendant to get out of his car, and made a search of it without any lawful authority or justification.

It is an unreasonable statement for an officer to say that at night without any light in the car and no flashlight, he can look in the car through the front door in a Chevrolet, and see what is on the floor of the car, back of the front seat.

The defendant in his petition in error has assigned five errors, alleged to have been committed by the trial court:

"1. That the court erred in overruling a motion to suppress the evidence.

"2. That the court erred in admitting incompetent, irrelevant, and immaterial testimony.

"3. That the evidence is wholly insufficient to show that the defendant committed a public offense against the laws of the state of Oklahoma.

"4. That the court erred in not directing the jury to return a verdict of not guilty pursuant to a motion and request of defendant filed at the close of all evidence.

"5. That the seizure of the whisky in this case was absolutely illegal and in contravention of the constitutional

rights of the defendant, that no search warrant was issued as required by law."

All these assignments will be considered together as they relate to the question as to whether or not the officers made an illegal search and seizure.

No brief has been filed on behalf of the state.

The defendant has fully briefed his case, and insists that the search by the officers was without authority of law; that they had no warrant to search his car or to search his person; and had no authority to compel him to get out of the car when he was peaceably sitting therein awaiting the repair of his headlights.

Section 2780, O. S. 1931, 22 Okla. St. Ann. § 196, provides in part:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence."

In this case the defendant was convicted for the commission of a misdemeanor, and while the officer did not state, it is apparent that the only ground upon which they could have arrested the defendant without a warrant was that an offense was committed within the presence of the officers.

It has been repeatedly held by this court that where the officers do not know of the act constituting the offense, the offense is not committed in their presence.

"Search," as defined in Black's Law Dictionary, is as follows:

"An examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence

of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged."

In Whitford v. State, 35 Okla. Cr. 22, 247 P. 424, 425, this court said:

"No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having liquor in his possession, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest, or shall be lawfully arrested without a warrant as authorized by law."

In the Whitford Case, as in this case, the officers forced the defendant to get out of the car, and searched the automobile upon the suspicion that there was whisky concealed therein.

In Crossman v. State, 28 Okla. Cr. 198, 230 P. 291, 292, the defendant was convicted for transporting liquor. The arresting officer stepped out of the car and told the defendant Crossman to stop. The defendant stooped down as if to hide, and the officer saw the outline of a bottle in the defendant's shirt and took the bottle of whisky from the defendant's shirt, which constituted unlawful search and seizure.

Quoting from Crossman v. State, supra, in the body of the opinion the court said:

"It seems clear that the defendant was arrested on suspicion merely; that the officer saw the imprint of a bulky article inside of the defendant's shirt, but did not know what the article was until he had forcibly searched the man and seized the package which he afterwards ascertained to be whisky. * * *

"In this case the officer's suspicion was verified by the subsequent arrest and seizure, but that result would not always follow in other cases. The grave effects of promiscuous arrests and seizures on suspicion in misdemeanor cases would be productive of more evil that could be offset by the good flowing from the occasional apprehension of a law violator by such methods." Graham et al. v. State, 31

Okla. Cr. 125, 237 P. 462; Klein v. State, 26 Okla. Cr. 173, 223 P. 201.

In Condron et al. v. State, 31 Okla. Cr. 130, 237 P. 465, an officer stopped a service car on the highway being driven by the defendant. A state's witness testified that the defendant's father owned the car, and that they stopped in a ravine and got the whisky, which was confiscated, and were driving back when it was searched without a search warrant.

In the opinion the court said:

"It has been repeatedly held by this court that, where the offense is not a felony, an officer cannot arrest without a warrant, unless the offense was committed or attempted in his presence, and that, where the officer does not know of the act constituting the offense, it is not committed in his presence." Keith v. State, 30 Okla. Cr. 168, 235 P. 631; Foster v. State, 25 Okla. Cr. 36, 218 P. 898; Thomas et al. v. State, 32 Okla. Cr. 57, 240 P. 133; Wright v. State, 52 Okla. Cr. 393, 5 P. 2d 766.

In the Wright Case the officers stopped the car in which the defendant was riding and searched the car, finding whisky in the back seat. The officers had no search warrant to search the car or for the arrest of the defendant. This court held that such search was unreasonable and contrary to section 30, article 2, of the Bill of Rights, Okla. St. Ann. Const., and was improperly received in evidence against the defendant; that the motion of the defendant to suppress was well taken; and the court erred in not permitting the defendant to produce testimony in support of his motion to suppress, and in overruling the same.

In Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135, 139, this court clearly defines the rights of the officers and the accused wherein the question of search and seizure is involved. The court stated as follows:

"The officers of this state ought to be the first to uphold the courts in the enforcement of these fundamental rights. The procuring of a search warrant is an easy mat-

ter. It ought not to be secured in a haphazard way and served in a reckless disregard of the rights of the individual citizen."

In H. P. Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603, we held that the evidence challenged in that case was secured by the officer by unlawful search and seizure, and was improperly received in evidence against the defendant. The facts in Morris v. State, supra, are very similar to the facts in this case. Keith v. State, 30 Okla. Cr. 168, 235 P. 631; Ingraham v. State, 48 Okla. Cr. 178, 290 P. 344; Bowen v. State, 50 Okla. Cr. 36, 295 P. 623; Wright v. State, 52 Okla. 393, 5 P. 2d 766.

The defendant's conviction, having no evidence to support it, without the use of the evidence unlawfully obtained, the case must be reversed.

The judgment of the trial court is reversed, and the cause remanded.

DOYLE, P. J., concurs. BAREFOOT, J., dissents.

BAREFOOT, J. (dissenting). My views on the search of automobiles without a search warrant are expressed in the case of Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603.

The facts in this case are much weaker than in the Morris Case.