## H. P. MORRIS v. STATE.

No. A-9528.  June 30, 1939.

(92 P. 2d 603.)

For former opinion, see 65 Okla. Cr. 220, 90 P. 2d 452.

Person E. Woodall and Justin Hinshaw, both of Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

DAVENPORT, J. The petition of the defendant for rehearing is sustained, and the law and facts reconsidered.

The record in this case discloses that it was filed in this court on May 31, 1938; that the case was submitted

on the record September 25, 1938; the case was considered by this court; and it was found that no briefs had been filed in support of the plaintiff in error's assignments.

Where no briefs are filed in support of assignments of error of the plaintiff in error on appeal, the court assumes that the appeal has been abandoned or the counsel representing the plaintiff in error has reached the conclusion that there are no errors in the record sufficient to warrant a reversal.

After the opinion was filed, counsel for the defendant H. P. Morris filed a petition for rehearing, and a brief in support of the same.

The facts in this case are very brief:

On the 5th day of November, 1937, the defendant was in the city of Norman.

H. L. Sanderson, in substance, testified that on the date mentioned someone gave him information that there was a whisky peddler in town; that he started out to see if he could find him, and finally saw a man go into a place of business with a bundle under his arm; that he later contacted another city officer by the name of Joe Starzer, and told him what he had heard. They started out to find the whisky peddler.

Sanderson further states that he was walking up the street, and that he saw a man sitting in a car at the curb, reading a paper. He went and beckoned to Starzer, and called him out, and said, "There is a man sitting up there in that car." They walked up to the car. Sanderson, going to the part nearest the driver's seat, looked in the car, but could not see anything until he opened the door and pulled an overcoat to one side, which afterwards developed that it was spread over some whisky in the car. He did not see this until after he had gone to the car, and talked to the man sitting in the car; and further states that he did not

see any whisky or anything but the overcoat in the car, until he moved the overcoat.

The testimony shows that this was a Tudor Chevrolet car. The testimony further shows that the whisky was on the floor of the car in the rear of the front seat.

Starzer says that when he stepped off the sidewalk and started toward the car, he saw the neck of a bottle of whisky sticking out, which was on the floor of the car in the rear of the front seat.

Neither of the officers had a search warrant for the defendant; nor had either of them a warrant for his arrest.

When they started out to look for the man supposed to have whisky, they did not know whom they were searching for. When they saw the defendant sitting in his car reading a newspaper, he was not disturbing the peace or any one in the city of Norman, but quietly sitting there in the car.

The foregoing is the substance of all the testimony it is deemed necessary to recite.

Seven errors have been assigned by the defendant.

The first and second assignments raise the question as to whether or not the court erred in admitting the state's testimony over the objections of the defendant, and refused to suppress the evidence of the state, secured without a search warrant to search the car of the defendant, or without a warrant for his arrest.

The testimony discloses the car in which the defendant was sitting at the time his car was searched was a Tudor Chevrolet car. To see anything from the front of the car in the rear of the front seat, it is necessary to open the door of the car and look over the back of the front seat. It is not probable that any one on the outside of the car could look in and see a small package of any kind on the

floor of the car in the rear of the front seat. The officers had no authority to put the defendant under arrest, or to search his car at this time, and no offense, as shown by the testimony in this case, was being committed by the defendant in the presence of the officers.

He was quietly sitting in his car on the street; and they went out for the purpose of finding somebody that was thought to be a whisky peddler, without any description of the man or without any warrant of arrest or justification.

In Whitford v. State, 35 Okla. Cr. 22, 247 P. 424, the court in the first paragraph of the syllabus stated:

"Where the offense is not a felony, an officer cannot arrest without a warrant, unless the offense was committed or attempted in his presence."

In the second paragraph of the syllabus the court stated:

"Where the officer does not know of the act constituting the offense, it is not committed in his 'presence.'" Wallace v. State, 49 Okla. Cr. 281, 294 P. 198, and authorities therein cited.

The Attorney General has presented an argument insisting that the petition filed for rehearing in this case should be denied, and cites in support of his argument Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081. We have examined the authority and find that it is good law, but that it does not fit the facts in the case being considered.

Bayne v. State, 42 Okla. Cr. 152, 274 P. 1095, cited by the Attorney General, is also a case in which this court properly held the search valid for the reason the facts showed that in entering the premises the officers could smell the mash cooking, and from their sense of smell could tell it was whisky mash.

The authorities cited by the state in support of the conviction of the defendant have been carefully read and

studied. We hold that they are not germane to the issue in this case, and that the search in this case was an unlawful search and seizure. There being no evidence, other than that procured by the unlawful search by the officers without a search warrant to search the defendant's car, and without a warrant for his arrest, his arrest and the search of his car was unlawful.

The motion to suppress was properly taken and should have been sustained. There being no competent testimony to sustain the conviction, the judgment of the trial court is reversed, with directions to dismiss the case, unless the county attorney has other competent evidence to present to the court.

DOYLE, P. J., concurs. BAREFOOT, J., dissents.

BAREFOOT, J. (dissenting). It is not often that the views of the members of this court are not unanimous. I cannot concur altogether with the views expressed in the foregoing opinion, and for that reason I am compelled to express my views herein. Knowing that this question will come before this court for consideration many times, I desire, in a few words, to express my views thereon. In the first place, the members of this court are in perfect accord on practically all aspects of the "search and seizure law." That this law should be strictly construed, and that officers of the law should not be permitted, by reason of their official capacity, to invade the private rights of citizens of this state in the protection of their homes, automobiles, and places of business. The officer, for his own protection, and the protection of the rights of the citizens, should, before attempting to search these premises, secure a search warrant and return the same in the manner provided by law. Grimes v. State, 65 Okla. Cr. 99, 83 P. 2d 410; McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135.

In the case under consideration, the officers of the law could have, with very little inconvenience to themselves,

secured a search warrant before searching defendant's automobile, and this question would not have been presented to this court. Officers, which includes the judges, county attorneys, and police officers, should have no desire, in their zeal to enforce the law, but to do so in a manner that the constitutional and statutory rights of the citizens of this state be properly protected. There should be, and I am sure is, a desire on their part to want to protect those fundamental rights. In writing a decision construing the law, it should and ought to be the aim of the judiciary to protect the rights of the humblest citizen as well as those who sit in the seats of the mighty, and while it is well recognized that the search and seizure laws of this state should receive a strict construction, I do not believe they should receive a technical construction which would deprive an honest, faithful, energetic officer of an opportunity to enforce the law against those who seek by ingenious means to violate the same, thus permitting those who violate the law to escape punishment through a technical construction.

This court has, by its previous decisions in many opinions, followed the general rules of law in making several important exceptions to the general rule as to the necessity of securing a search warrant, and permitting an officer to search without one. Among those well defined exceptions are:

1. When a crime is committed in the presence of an officer, even though it be a misdemeanor.

2. Where one is lawfully arrested, the officer may search such person, and seize anything found upon him, or in his immediate control, the possession of which is unlawful.

To justify the search of a person and immediate surroundings of the person arrested, the arrest must be done in good faith and not as an excuse or subterfuge for search otherwise unlawful.

A quotation from the case of Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 282, 69 L. Ed. 543, 39 A.L.R. 790, to which reference will hereafter be made, is stated:

"In the passage of the supplemental act through the Senate Amendment No. 32, known as the Stanley Amendment, was adopted, the relevant part of which was as follows:

\*     \*     \*     \*     \*

"This amendment was objected to in the House, and the judiciary committee, to whom it was referred, reported to the House of Representatives the following as a substitute:

\*     \*     \*     \*     \*

"In its report the committee spoke in part as follows:

" 'It appeared to the committee that the effect of the Senate amendment No. 32, if agreed to by the House, would greatly cripple the enforcement of the National Prohibition Act and would otherwise seriously interfere with the government in the enforcement of many other laws, as its scope is not limited to the prohibition law, but applies equally to all laws where prompt action is necessary. There are on the statute books of the United States a number of laws authorizing search without a search warrant. Under the common law and agreeable to the Constitution search may, in many cases, be legally made without a warrant. The Constitution does not forbid search, as some parties contend, but it does forbid unreasonable search. This provision in regard to search is as a rule contained in the various state Constitutions, but notwithstanding that fact search without a warrant is permitted in many cases, and especially is that true in the enforcement of liquor legislation.

" 'The Senate amendment prohibits all search or attempt to search any property or premises without a search warrant. The effect of that would necessarily be to prohibit all search, as no search can take place if it is not on some property or premises.

" 'Not only does this amendment prohibit search of any lands, but it prohibits the search of all property. It

will prevent the search of the common bootlegger and his stock in trade, though caught and arrested in the act of violating the law. But what is perhaps more serious, it will make it impossible to stop the rum-running automobiles engaged in like illegal traffic. It would take from the officers the power that they absolutely must have to be of any service, for if they cannot search for liquor without a warrant they might as well be discharged. It is impossible to get a warrant to stop an automobile. Before a warrant could be secured the automobile would be beyond the reach of the officer with its load of illegal liquor disposed of.' "

As I read the record in the instant case, two police officers of the city of Norman had certain information that a bootlegger was in town. Certain conversations had between them when the defendant was not present were permitted to be introduced. I do not think this evidence was admissible. There is some doubt as to its being sufficiently prejudicial to reverse this case. One of the officers had seen the defendant carrying a package under his arm which the circumstances showed he believed to be a package of whisky. Afterwards the defendant was seen by one of the officers sitting in his automobile on the main street of Norman, reading a newspaper. The two officers approached defendant on opposite sides of the car. One of the officers was the chief of police, who engaged the defendant in conversation. The other officer, a patrolman, looked through the glass window of the automobile and saw the neck of a bottle of whisky. The bottle was partly covered with an overcoat. He opened the car door and found two packages, one containing five pints, the other six pints of whisky. He immediately arrested the defendant and he and the liquor were turned over to the sheriff of Cleveland county. The same was present and offered in evidence in the case. The evidence of the chief of police was to the effect that he did not see the liquor. The other officer testified positively that he saw the liquor, and knew it was liquor, before he opened the door and made the arrest. There was some evidence offered at the trial that the officer who claimed to

have seen the whisky and made the arrest of defendant, at some time prior to the trial, had made an affidavit that he did not see the whisky before making the arrest. This was denied by the officer. The affidavit was not produced at the trial, defendant claiming that it has been destroyed, and the officer that he did not make it. It is unimportant as to the issues involved in this court.

The evidence also disclosed that defendant had made certain statements at the time of his arrest in which he claimed he had purchased protection, and had paid somebody $200 for same. These matters were for the proper consideration of the jury but can not affect the decision here. The jury, under proper instructions of the court, convicted defendant and assessed his punishment at a fine of $100 and 30 days in jail.

My view of the law as applied to the facts in this case is that under the evidence and circumstances here shown the officers had the right to seize the liquor and arrest the defendant without the necessity of having a search warrant. As previously stated, and I now wish to reiterate that, I think it is the best practice for the officer to secure a search warrant where it is possible to do so, even though there be circumstances which give him the right to search without the necessity of securing the same. This for his own protection and for the protection of the defendant; but, as stated under the facts and circumstances of this case, I do not consider it was necessary. Under the facts the question of whether the liquor was seen by the officer prior to the seizure and arrest of defendant was a question of fact for the consideration of the jury, under proper instructions of the court. I do not intend to say that officers should be permitted to search the automobiles of persons without a search warrant unless there are facts and circumstances which justify this right, as herein indicated, but when these facts and circumstances are such that justify, he is certainly justified in taking this step. This is in conformity with the decisions of this court and the courts of other states

and the nation. Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081; McAfee v. State, 65 Okla. Cr. 65, 82 P. 2d 1006; Skinner v. State, 44 Okla. Cr. 271, 280 P. 851; Ott v. State, 65 Okla. Cr. 317, 86 P. 2d 341; Spikes v. State, 65 Okla. Cr. 254, 85 P. 2d 327; Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076; Wallace v. State, 49 Okla. Cr. 281, 294 P. 198; Gambill v. State, 45 Okla. Cr. 281, 283 P. 262; Washington v. State, 37 Okla. Cr. 415, 259 P. 150; Callahan v. State, 42 Okla. Cr. 425, 276 P. 494; Dean v. State, 63 Okla. Cr. 385, 75 P. 2d 900; Miles v. State, 31 Okla. Cr. 4, 236 P. 907; McBride v. United States, 5 Cir., 284 F. 416; United States v. Sebo, 7 Cir., 101 F. 2d 889; Scherie v. United States, 305 U. S. 251, 59 S. Ct. 174, 83 L. Ed. ___; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790.

In the Carroll Case, it is said:

"We here find the line of distinction between legal and illegal seizures of liquor in transport in vehicles. It is certainly a reasonable distinction. It gives the owner of an automobile or other vehicle seized under section 26, in absence of probable cause, a right to have restored to him the automobile, it protects him under the Weeks [Weeks v. U. S., 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177] and Amos [Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654] Cases from use of the liquor as evidence against him, and it subjects the officer making the seizures to damages. On the other hand, in a case showing probable cause, the government and its officials are given the opportunity which they should have, to make the investigation necessary to trace reasonably suspected contraband goods and to seize them.

"Such a rule fulfills the guaranty of the Fourth Amendment. In cases where the securing of a warrant is reasonably practicable, it must be used and when properly supported by affidavit and issued after judicial approval protects the seizing officer against a suit for damages. In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his

peril unless he can show the court probable cause. United States v. Kaplan (D. C.) 286 F. 963, 972.

"But we are pressed with the argument that if the search of the automobile discloses the presence of liquor and leads under the statute to the arrest of the person in charge of the automobile, the right of seizure should be limited by the common-law rule as to the circumstances justifying an arrest without a warrant for a misdemeanor. The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence. Kurtz v. Moffitt, 115 U. S. 487, 6 S. Ct. 148, 29 L. Ed. 458; Bad Elk v. United States, 177 U. S. 529, 20 S. Ct. 729, 44 L. Ed. 874. The rule is sometimes expressed as follows:

" 'In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.' Halsbury's Laws of England, vol. 9, part. III, 612.

"The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace (1 Stephen, History of Criminal Law, 193), while the reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant. Rohan v. Sawin, 5 Cush. (Mass.) 281. The argument for defendants is that, as the misdemeanor to justify arrest without warrant must be committed in the presence of the police officer, the offense is not committed in his presence unless he can by his senses detect that the liquor is being transported, no matter how reliable his previous information by which he can identify the automobile as loaded with it. Elrod v. Moss [4 Cir.] 278 F. 123; Hughes v. State, 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639.

"So it is that under the rule contended for by defendants, the liquor, if carried by one who has been already

twice convicted of the same offense, may be seized on information other than the senses; while if he has been only once convicted it may not be seized unless the presence of the liquor is detected by the senses as the automobile concealing it rushes by. This is certainly a very unsatisfactory line of difference when the main object of the section is to forfeit and suppress the liquor, the arrest of the individual being only incidental as shown by the lightness of the penalty. See Com. v. Street, 3 Pa. Dist. & Co. R. 783. In England at the common law the difference in punishment between felonies and misdemeanors was very great. Under our present Federal statutes, it is much less important and Congress may exercise a relatively wide discretion in classing particular offenses as felonies or misdemeanors. As the main purpose of section 26 was seizure and forfeiture, it is not so much the owner as the property that offends. Agnew v. Haymes [4 Cir.] 141 F. 631, 641, 72 C. C. A. 325. The language of the section provides for seizure when the officer of the law 'discovers' anyone in the act of transporting the liquor by automobile or other vehicle. Certainly it is a very narrow and technical construction of this word which would limit it to what the officer sees, hears or smells as the automobile rolls by and exclude therefrom when he identifies the car the convincing information that he may previously have received as to the use being made of it.

"We do not think such a nice distinction is applicable in the present case. When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution. Weeks v. United States, 34 S. Ct. 341, 232 U. S. 383, 392, 58 L. Ed. 652 [655], L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Dillon v. O'Brien, 16 Cox, C. C. 245; [20 L. R. Ir. 300, 7 Am. Crim. Rep. 66]; Getchell v. Page, 103 Me. 387, 69 A. 624, 18 L. R. A., N. S., 253, 125 Am. St. Rep. 307; Kneeland v. Connally, 70 Ga. 424; 1 Bishop, Criminal Procedure, § 211; 1 Wharton, Criminal Procedure, 10th Ed., § 97. The argument of defendants is based on the theory that the seizure in this case can only be thus justified. If their theory were sound, their conclusion would be. The validity of the seizure then would turn wholly on the validity of the arrest without a seizure. But the theory is unsound.

The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. The seizure in such a proceeding comes before the arrest as section 26 indicates. It is true that section 26, title 2, provides for immediate proceedings against the person arrested and that upon conviction the liquor is to be destroyed and the automobile or other vehicle is to be sold, with the saving of the interest of a lienor who does not know of its unlawful use; but it is evident that if the person arrested is ignorant of the contents of the vehicle, or if he escapes, proceedings can be had against the liquor for destruction or other disposition under section 25 of the same title. The character of the offense for which, after the contraband liquor is found and seized, the driver can be prosecuted does not affect the validity of the seizure.

"This conclusion is in keeping with the requirements of the Fourth Amendment and the principles of search and seizure of contraband forfeitable property; and it is a wise one because it leaves the rule one which is easily applied and understood and is uniform. Houck v. State, 106 Ohio St. 195, 140 N. E. 112, accords with this conclusion. Ash v. United States [4 Cir.], 299 F. 277, and Milam v. United States [4 Cir.], 296 F. 629, decisions by the Circuit Court of Appeals for the Fourth Circuit take the same view. The Ash Case is very similar in its facts to the case at bar, and both were by the same court which decided Snyder v. United States [4 Cir.], 285 F. 1, cited for the defendants. See, also, Park v. United States (1st C. C. A.) 294 F. 776, 783, and Lambert v. United States (9th C. C. A.) 282 F. 413."

The court further said:

"In the light of these authorities, and what is shown by this record, it is clear the officers here had justification for the search and seizure. This is to say that the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched."

In this case the opinion of Chief Justice Taft expresses the opinion and cites the authorities supporting the contention of the right to search automobiles under certain circumstances without the necessity of securing a search warrant. Justice McReynolds, in a dissenting opinion, expresses the thought of the opposition, and cites the authorities sustaining his position. My views are in accord with the expression of Chief Justice Taft in the Carroll Case, and the opinions expressed in the other cases above cited, and the opinions to which reference is made in those cases.