## JIM HARRINGTON v. STATE.

No. A-9449.   June 16, 1939.
(91 P. 2d 787.)

Emmons Arrington, of Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error was convicted in the county court of Pottawatomie county under an information which charged that in said county on the 27th day of August, 1937, he did have in his possession 6 quarts of whisky with the unlawful intent to sell the same, and in accordance with the verdict of the jury was sentenced to serve 60 days in the county jail and pay a fine of $100 and the costs, taxed at $47.55.

The facts as shown by the testimony of two witnesses for the state, D. O. Barton and Willis Moore, deputy sheriffs, are, that on the date alleged they went to the home of the defendant, in the north part of Tecumseh, being the second house north of Tease's filling station; the defendant was not there, his wife was sitting on the front porch, so they served the search warrant on Mrs. Harrington, then searched the house and found two half-gallon fruit jars full of whisky under the stove and a third fruit jar half full of whisky in the kitchen cabinet.

The defendant, as a witness in his own behalf, testified that he had lived 36 years in Pottawatomie county; that a few days before the officers searched his home a man driving a 36 model Ford sedan stopped at Tease's filling station, about 25 feet south of his home; that he was sitting on the porch and heard the man say he wanted to buy or trade for some tires; Tease's boy told him they did not have any. He went over and told the man he had just bought some new tires and had two or three old tires. The man said he did not have any money, but he had some whisky that he would trade for the casings. He asked him how much he would give for them, and the man said three half gallons. He said, "It is a deal." He took the whisky and the man took the tires; that he never sold any whisky, and that he did not intend to sell the whisky.

Numerous errors are assigned and argued in the brief. The only question, however, that need to be considered is

whether the justice of the peace had jurisdiction to issue the search warrant in the execution of which the whisky in question was seized.

When the case came on for trail, the defendant filed a motion to suppress the evidence and dismiss the case on grounds which may be summarized as follows: That the search warrant was not issued, served and returned as by law provided; that there is not of record a verified complaint for search and seizure on file in the office of John Hatfield, justice of the peace, Tecumseh city district; that complaint was not sworn to before said justice; that the affiant, Elza Evans, did not sign said complaint in the presence of said justice of the peace; that the warrant did not issue from said justice of the peace acting in his district, therefore said search and seizure was in violation of the defendant's constitutional and statutory rights.

In support of the motion to suppress, Elza Evans, called as a witness, testified in part as follows:

"Q. You are the sheriff of Pottawatomie county? A. I am. Q. Were you active in your office about the 25th day of August, 1937? The Court: Is that the date of issuing the warrant? By Mr. Arrington: The day before. A. I believe I was in my office at that time, the best I remember. Q. Mr. Evans, on that date did you see John Hatfield, the justice of the peace at Tecumseh? A. To my best recollection, I did. Q. And did you see him on the 26th of August, 1937? A. I don't remember whether I saw him. Q. Mr. Evans, did you sign the complaint for search and seizure in front of J. H. Hatfield, to search Jim Harrington's premises, in the month of August, ranging from the 25th to the 26th, 1937? Mr. Wyatt: Objected to as incompetent, irrelevant and immaterial, the complaint speaks for itself. The Court: Sustained. Mr. Arrington: Comes now the defendant and offers to prove by the witness that the complaint for search and seizure of defendant's premises, on or about the 26th day of August, 1937, was not signed and verified to as by law provided in front of the justice of the peace who issued the warrant for search and seizure of the defendant's home. Mr.

Albert: We object as incompetent, irrelevant and immaterial, and not the best evidence. The complaint speaks for itself. The Court: Sustained for the reason that the court is of the opinion that the Criminal Court of Appeals has repeatedly held that if an affidavit for search and seizure or a warrant for search and seizure is full, fair and complete on its face, that the same is not subject to attack on motion to quash the information or suppress the evidence in a criminal cause. Mr. Arrington: Exception."

The "Complaint for Search and Seizure" introduced as defendant's exhibit recites:

"Before me, J. H. Hatfield, Justice of the Peace, in and for Pottawatomie County, Oklahoma.

"In re: Application of Elza Evans for search warrant, State of Oklahoma, Pottawatomie County.

"Elza Evans, being first duly sworn, on oath, states:"

Then continues with allegations, printed form, same as set forth in the opinion in case of Spikes v. State, 65 Okla. Cr. 254, 85 P. 2d 327, and is signed and verified as follows:

"Elza Evans, Affiant.

"Signed in my presence and sworn to before me this the 26th day of August, 1937.

"J. H. Hatfield, Justice of the Peace."

The warrant for search and seizure recites:

"Before me J. H. Hatfield, Justice of the Peace in and for Pottawatomie County, Oklahoma:

"In re: Application of Elza Evans for search warrant.

"The State of Oklahoma to the sheriff of Pottawatomie County, or any deputy sheriff, constable, marshal, or policeman of Pottawatomie county, Oklahoma, Greeting."

Then follows copy of complaint. Warrant is signed as follows:

"Witness my hand this the 26th day of August, 1937,

"J. H. Hatfield, Justice of the Peace."

We think the trial court erred in sustaining the state's objections, and in excluding all offered testimony, because the same was not in contradiction of the record, as shown by the complaint and search warrant, in that the same does not show that the magistrate performed his judicial acts within his own district.

In the case of Uhlenhake v. State, 58 Okla. Cr. 248, 52 P. 2d 117, 120, it is said:

"Where a justice of the peace has acquired jurisdiction, the only competent evidence of the proceedings had is the record required by law to be made, and the record is conclusive as against any parol attack in a collateral proceeding attempting to impeach it. Ex parte Walton, 2 Okla. Cr. 437, 101 P. 1034. * * *

"The complaint or affidavit and the search warrant should be matters of public record in the office of the justice of the peace who issued the search warrant."

While it is well settled that the judgment of a justice of the peace, in a matter of which by law such court had jurisdiction, and wherein it had, according to law, acquired jurisdiction, cannot be assailed collaterally on account of mere irregularities in the proceedings, subsequent to acquiring jurisdiction, but the jurisdiction, to be complete, so as to preclude collateral attack, must exist both as to the subject matter and as to the parties.

The question to be determined is, Was the matter of the place where the oath, verifying the complaint was administered and the search warrant issued thereon, a matter of jurisdiction or rather one of procedure?

The statute provides that justices of the peace shall reside and keep their offices in the district from which they are elected. Sec. 4136, 39 Okla. St. Ann. § 6.

In the case of Hart v. Grove, 76 Okla. 179, 184 P. 572, the Supreme Court of this state held:

"A justice of the peace being a township officer under the Constitution and laws of this state, he can perform his official acts only in his own township."

In the opinion it is said:

"In Leiber v. Argaubright, 25 Okla. 177, 105 P. 341, it was held that a justice of the peace is a township officer, under the Constitution, and cannot be a county or state officer. It is true that justices of the peace are, in a sense, justices of the peace in their respective counties, and also in the state. It is true that a justice of the peace may, in his own township, perform the duties of an examining magistrate in cases or hear cases arising in any part of the county; it is also true that he may within his own township, issue criminal process to be served in any part of the state; but it does not follow from these powers given that he may go into any part of the county or any part of the state and perform official acts. He can perform his official acts only in his own township."

In the case of Berry v. State, 10 Okla. Cr. 308, 136 P. 195, this court held:

"Under the law in this state a justice of the peace has no jurisdiction to preside over the trial of any civil or criminal proceeding outside of the district for which he was elected or appointed. * * *

"Any trial had or any business attempted by a justice of the peace outside of the district for which he was elected or appointed is a nullity."

In Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 266, 65 L. Ed. 647, the Supreme Court of the United States said:

"A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

The witness, Elza Evans, who verified the complaint, asked: Did you see John Hatfield, the justice of the peace, at Tecumseh on the 26th day of August, 1937? Answered:

"I don't remember whether I saw him." And it does not affirmatively appear from the complaint, subscribed and sworn to before J. H. Hatfield, justice of the peace, or from the warrant for search and seizure, issued thereon, that said justice of the peace was acting within his justice of the peace district, the city of Tecumseh.

Our conclusion is that, under the provisions of the statute and the foregoing authorities, the verification of the complaint, and the issuance of the search warrant thereon was a matter of jurisdiction, and not of procedure, and where the record is silent, as in this case, jurisdiction will not be conclusively presumed, and evidence showing or tending to show want of jurisdiction should have been admitted.

While this court is disposed to regard tolerantly any mere technical irregularities, or defects of form in proceedings before justices of the peace, it would be going too far to hold the record in this case to be sufficient to support or justify the invasion of the defendant's home for search and seizure under a search warrant that upon its face fails to show that the magistrate issuing the same acted within his district, and merely signed the same as "J. H. Hatfield, Justice of the Peace."

Upon the evidence adduced and the proof offered in support of the motion to suppress, the entire proceedings before the justice of the peace who issued the search warrant were a nullity.

The judgment of said county court herein is therefore reversed, and the cause remanded, with direction to dismiss.

BAREFOOT and DAVENPORT, JJ., concur.