JOHN KUHN et al. v. STATE.

N. A.-9586.  Aug. 14, 1940.

(104 P. 2d 1010.)

120

E. Moore, of Coalgate, and W. E. Utterback, of Durant, for plaintiffs in error.

No brief for the State.

DOYLE, P. J. The plaintiffs in error were jointly charged, tried and convicted in the county court of Coal county, under an information which charged that in said county on the 22nd day of December, 1937, they did have in their possession certain intoxicating liquor with the unlawful intent to sell the same, and in accordance with the verdicts of the jury John Kuhn was sentenced to serve 30 days in the county jail and to pay a fine of $100, and Lee Oldham was sentenced to serve 30 days in the county jail and to pay a fine of $50.

To reverse the judgments they appealed.

Numerous errors are assigned, but the only question that need be considered is whether the justice of the peace had jurisdiction to issue the search warrant in the execution of which the whisky in question was seized.

On July 21, 1938, the defendants filed a motion to suppress the evidence, which may be summarized as follows:

That the evidence upon which said information is based was obtained by a search of the defendants' premises without authority of law and was in violation of section 30 of the Bill of Rights, Okla. St. Ann. Const., guaranteeing the security of the people in their right to be exempt in their persons, houses, papers, and effects from unreasonable search and seizure, and neither of said defendants waived his constitutional rights or consented to the search of said premises by said officers; that no affidavit was made upon which the purported search warrant was based, and said purported warrant was therefore void, said pur-

ported search warrant was issued without complaint or affidavit as required by law, and the search and seizure so made was therefore unlawful and unreasonable.

On July 25, 1938, said motion to suppress the evidence and dismiss the cause was heard by the court.

The purported affidavit and search warrant were identified and introduced in evidence.

In support of the motion to suppress, E. Pritchard, called as a witness, testified as follows:

"Q. Did you hold any office in Coal county on December 22, 1937? A. Yes, sir. Justice of the Peace. Q. Did you issue a search warrant on the 22nd day of December 1937, which I now hand you? A. I have got my name signed to it? Q. You issued that? A. Yes, sir.

"Q. I now hand you a document, defendant's Exhibit 2, and ask you to state to the court what that is? A. Affidavit for search warrant. Q. When was that presented to you and by whom? A. It was presented to me,—I would not be right sure, whether it would be the sheriff or the county attorney. I would not be positive which one. Q. When that was presented to you, was Mrs. Nell Brothers present? A. No, I think not. Q. Was she present at any other time before you that day? A. I don't believe—not to make any complaint. She was present and wanted to know where the county attorney was? Q. Just asked for the attorney? But you issued this search warrant, which is marked 'Defendant's Exhibit 1'? Did Mrs. Nell Brothers swear to that affidavit before you? A. No, she did not. Q. Did she appear before you at all with that affidavit? A. Not to my knowledge. Q. Is that the only affidavit, or purported affidavit, which you had, upon which you issued the search warrant? A. I don't know of any more. Q. You issued the search warrant when Mr. Balch, the county attorney, or Mr. Clark, sheriff, gave you this document, without seeing Mrs. Brothers, and without her having sworn to it before you? A. I believe that is right."

Walter Clark, the sheriff who served the search warrant, testified as follows:

"Q. I hand you document marked 'Defendant's Exhibit 1' and ask you to state when you first saw that document, and where, on the 22nd day of December, 1937? A. In my office. Q. Who gave it to you? A. The county attorney, Mr. Balch. Q. Did you serve that search warrant? A. I did. Q. In what manner did you serve it? A. I went to Johnnie Kuhn's place, and went in and told him I had a search warrant for his place and handed him a copy, and proceeded to search. Q. I believe it is located on lots 1, 2, 3, 4, 5, block 106 in the city of Coalgate, on the right side of U. S. Highway No. 75 going south in the city of Coalgate after you cross the railroad; is that the description of it? A. Yes, sir. Q. Whatever liquors of any kind or character you found in there were found by you, operating under and executing the search warrant which you now hold, and which is now in evidence as 'Defendant's Exhibit 1?' A. Yes, sir. Q. That was your authority for making the search? A. Yes, sir, it was. Q. You had no other authority? A. No. Q. You have not made any search under any other search warrant of these premises after that time? A. No. Q. Who was with you when you made that search? A. C. C. West and O. C. McMillan. Q. Is that the only search you have made of Johnnie Kuhn's premises in Coalgate with these parties accompanying you in the last twelve months? A. That is the only search that was made."

Cross-Examination.

By Mr. Balch:

"Q. At the time this search warrant you testified to here was delivered to you by the county attorney, the justice of the peace signature was not on it at that time? A. No, sir. Q. It was you who ascertained the whereabouts of the justice of the peace and obtained his signature? A. Yes, sir. Q. Did you know that Mrs. Brothers—you had a conversation with her, did you not? A. We had when she was in the office and talked to Mr. McMillan, and she said she wanted to get a search warrant. Objection overruled. A. I told her she would have to see the

county attorney to make the affidavit, and she left my office and went to his office. The Court: Motion to suppress the evidence will be overruled. Mr. Utterback: Exception. "

The purported affidavit introduced as "Exhibit 2" entitled: "In Justice Court," recites: "I, Mrs. Nell Brothers, do solemnly swear that certain intoxicating liquors, to wit: Whisky and or beer are now being kept and stored in". Then describing the premises and continuing with allegations of possession with unlawful intent to sell the same and verified as follows:

"Mrs. Nell Brothers. Subscribed and sworn before me this 22nd day of December, 1937. E. Pritchard, J. of P.

"Endorsed: No. 813 in justice court. Filed ........ 19....".

The search warrant issued thereon is signed: "Witness my hand this 22nd day of December, 1937. E. Pritchard, Justice of the Peace. Coalgate district, Coal County, Oklahoma."

The officer's return thereon reads: "Received this writ on the 22nd day of December, 1937, and executed the same on said day by searching premises within described and found the following described liquor" Describing 16 pints of whisky. Signed: "Walter Clark, Sheriff."

Upon the record before us and the undisputed facts in evidence there was no complaint or affidavit made upon oath or affirmation as required by section 30 of the Bill of Rights. Const. art. 2. sec. 30.

Under provisions of state and federal Constitutions against unreasonable searches and seizures, it is uniformly held that a search warrant must conform strictly to the constitutional and statutory provisions for its issuance, and no presumptions of regularity are to be invoked in aid of process under which an officer obeying its command undertakes to justify.

Booth v. State, 67 Okla. Cr. 413, 94 P. 2d 846.

The Code of Criminal Procedure provides:

"The magistrate must, before issuing the warrant, take, on oath, the complaint of the prosecuting witness in writing, which must set forth the facts tending to establish the grounds of the application, or probable cause for believing that they exist." Section 3224, 22 Okla. St. Ann. § 1224.

The Code defines an affidavit as follows:

"An affidavit is a written declaration, under oath, made without notice to the adverse party." Section 289, O.S. 1931, 12 Okla. St. Ann. § 422.

In Bowdry v. State, 60 Okla. Cr. 46, 61 P. 2d 31, it is held a search warrant was void if issued without an oath or affirmation as required by law, and see Ford v. State, 34 Okla. Cr. 185, 246 P. 909.

In the case of Uhlenhake v. State, 58 Okla. Cr. 248, 52 P. 2d 117, 120, this court said:

"Where a justice of the peace has acquired jurisdiction, the only competent evidence of the proceedings had is the record required by law to be made, and the record is conclusive as against any parol attack in a collateral proceeding attempting to impeach it. Ex parte Walton, 2 Okla. Cr. 437, 101 P. 1034."

In issuing a search warrant the statute requires the evidence of probable cause to be made a permanent record in the form of a verified complaint or an affidavit.

"The complaint or affidavit and the search warrant should be matters of public record in the office of the justice of the peace who issued the search warrant."

In Harrington v. State, 66 Okla. Cr. 310, 91 P. 2d 787, this court held:

"Though the judgment of a justice of the peace, who has jurisdiction, cannot be assailed collaterally on account

of mere irregularities in the proceedings, subsequent to acquiring jurisdiction, the jurisdiction, to be complete, so as to preclude collateral attack, must exist both as to the subject matter and as to the parties."

In the opinion it is said:

"Our conclusion is that, under the provisions of statute and the foregoing authorities, the verification of the complaint, and the issuance of the search warrant thereon was a matter of jurisdiction, and not of procedure, and where the record is silent, as in this case, jurisdiction will not be conclusively presumed, and evidence showing or tending to show want of jurisdiction should have been admitted."

The United States Supreme Court, in the case of Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 263, 65 L. Ed. 647, elaborately discusses the rights of the people guaranteed to them by the Fourth and Fifth Amendments to the Federal Constitution of the United States. In its opinion, written by Mr. Justice Clark, the court said:

"It would not be possible to add to the emphasis with which the the framers of our Constitution and this court in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319 [24 A.L.R. 1426]) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided

that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers."

The constitutional provisions relied upon by the defendants are as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided." Const. art. 2, sec. 21.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized." Const. art. 2, sec. 30.

Section 21 corresponds in substance with article 5, and section 30 is identical with article 4, respectively, of the amendments to the Constitution of the United States.

In the present case, the evidence in support of the motion to suppress, which is undisputed, shows that no affidavit or complaint properly authenticated by the oath of the person making the complaint was on file with the justice of the peace at the time he signed the search warrant. Said justice of the peace testifed that the purported affidavit was not signed or verified before him, and that said affiant, Mrs. Nell Brothers, did not appear before him with said affidavit; that the same was given to him by the sheriff or county attorney, he would not be positive which one.

The sheriff testified that the search warrant was given to him by the county attorney; that the signature of the justice of the peace was not on it at the time, and he had said justice sign it.

It thus appears that no complaint, properly verified, or affidavit as required by law was ever presented to said justice of the peace.

Our conclusion is that upon the record and the proof offered in support of the motion to suppress the evidence, the entire proceedings, before the justice of the peace who signed the search warrant, were a nullity.

It follows that the defendants' motion to suppress the evidence should have been sustained.

The verdicts and judgments of conviction having no competent evidence to support the same, the judgments of the county court of Coal county herein must be reversed, and the cause remanded, with direction to dismiss. It is so ordered.

JONES, J., concurs. BAREFOOT, J., absent.